# APPELLATE COURT

# OF THE STATE OF CONNECTICUT

---

A.C. 16726

---

ANTONIO DEOLIVERIA

v.

ROSS & ROBERTS, INC., ET AL

---

## PLAINTIFF-APPELLANT'S
## APPEAL FROM THE WORKERS' COMPENSATION SEVENTH DISTRICT
## AND THE COMPENSATION REVIEW BOARD

---

## PLAINTIFF-APPELLANT'S BRIEF

To Be Argued By:
Laurence V. Parnoff
1566 Park Avenue
Bridgeport, Conn. 0660
203-336-1861; fax: 203-336-1863

For the Plaintiff:
Laurence V. Parnoff P.C.
1566 Park Avenue
Bridgeport, Conn. 066044
203-336-1861

## TABLE OF CONTENTS

Page

A. STATEMENT OF ISSUES — 2

B. TABLE OF AUTHORITIES — 3

C. STATEMENT OF PROCEEDINGS AND FACTS — 4

D. ARGUMENT
   ISSUE 1 — 9
   ISSUE 2 — 13

E. CERTIFICATION — 16

## STATEMENT OF ISSUE

1. IS INJURY RESULTING FROM THE EMPLOYER'S HANDLING OF AN INJURED EMPLOYEE'S WORKERS' COMPENSATION CLAIM ITSELF A COMPENSABLE INJURY UNDER THE WORKERS' COMPENSATION ACT?

2. MAY THE COMMISSIONER DISREGARD THE OPINION OF EXPERTS HE HAS RELIED ON REGARDING THE CAUSE OF AN INJURED EMPLOYEE'S CONDITION?

## TABLE OF AUTHORITIES

Page

### Connecticut Constitution

1.  Section 10 of Article First                                    10

### Connecticut General Statutes

1.  31-284(a)                                                    9,10

### I. Case Law

1.  Bakelaar v. West Haven,
        193 Conn. 59, 67, 475 A.2d 283 (1984)                       9
2.  Bates v. Carroll, 99 Conn. 677, 679 (1923)                     14
3.  Crochiere v. Board of Education,
        227 Conn. 333, 350 (1993)                                10,12
4.  Latham & Associates, Inc. v. William Raveis Real
        Estate, Inc., 218 Conn. 297, 301, (1991)                 14,15
5.  Madore v. New Departure Manufacturing Company,
        104 Conn. 709 (1926)                                       14
6.  State v. Orsini, 155 Conn. 367, 371 (1967)                     15

## STATEMENT OF PROCEEDINGS AND FACTS

Antonio DeOliveira sustained during a night shift where he worked alone a work related back injury on May 11, 1989 while an employee of Ross and Roberts, Inc. of Stratford, Connecticut, the employer-respondent. He reported that injury the next morning to his employer and was sent to Med Now which advised him to remain out of work for a few days and if his condition did not improve to see his own doctor.

His condition continued to deteriorate, Mr. DeOliveira saw Dr. Forte, a chiropractor who gave him a report to take to his employer disabling him. Upon receipt of Dr. Forte's note the employer instructed Mr. DeOliveira to see Dr. Dworken by its letter of June 5, 1989, (Claimant's Exhibit 9).

Doctor Dworken examined Mr. DeOliveira on June 29, 1990 found that Mr. DeOliveira had sustained a disabling back injury at work and referred Mr. DeOliveira back to Dr. Forte for treatment. Dr. Dworken also reported that Mr. DeOliveira was "depressed because he could not function . . . ." (Claimant's Exhibit 17).

4

Despite these reports both Ross and Roberts and its insurer, Liberty Mutual Insurance Co. contested Mr. DeOliveira's Workers' Compensation claim and failed to pay benefits until after Commissioner Metro issued his finding and award on March 30, 1995.

Commissioner metro made the following findings:

1. "The Claimant, Antonio DeOliveira, was an employee of Ross and Roberts on May 11, 1989, working at their Stratford, Connecticut plant." (Finding and Award, paragraph A).

2. "On said date, while lifting a number of bags of material weighing 50 pounds or more, the Claimant suffered a physical injury to his low back which necessitated his treating with Doctors Forte and Dworken, as well as other physicians." (Finding and Award, paragraph B).

3. ". . . The treating physicians of the Claimant for the low back injury were doctors Forte and Dworken . . . ." (Finding and Award, paragraph E).

5

4.  "The Claimant was referred to Dr. Gang [a clinical psychologist] by Dr. Forte and Dr. Dworken." (April 25, 1995 Ruling on Claimant's Motion To Correct Finding And Award Dated March 30, 1995).

5.  ". . . The emotional/psychological problems which the Claimant developed, and may still be suffering from, are a result of his frustration with the treatment he received by his employer, the delays in resolving his claim, a sense of loss of honor, and other factors which he attributes and blames on the employer." (Finding and Award, paragraph I).

6.  "The Claimant was referred to and treated by Mark Gang, Ph.D., who in a deposition of June 26, 1992, diagnosed the Claimant as suffering from depression and atypical anxiety with symptoms of post traumatic stress." (Finding and Award, paragraph 25; and April 25, 1995 Ruling on Claimant's Motion To Correct Finding And Award Dated March 30, 1995).

7.  "Dr. D'Apice, in the same deposition opined, 'That the narcissistic injury, the symbolic injury was concomitant with the real injury. The two are to go together. Just like you cannot separate the body from the soul.'" (Finding and Award, paragraph 32).

8. "Dr. D'Apice also testified, `It is my medical opinion that the narcissistic injury occurred on May 11, 1989 while the individual was working . . . The functional overlay was concomitant and associated with the narcissistic injury and Mr. DeOliveira feeling that he was not being treated fairly or rightly.'" (Finding and Award, paragraph 34).

9. ". . . The Respondent employer's denial of the compensability of the Claimant's alleged back injury was unreasonable and caused unnecessary delay in the processing of the Claimant's claim . . . ." (Finding and Award, second to last paragraph).

With the exception of number 5 above (to which the claimant took partial exception with the Commissioner's failure to find that the emotional/psychological problems were also a result of the physical injury to the back itself) none of these findings were contested and all are res adjudicata and binding on the parties.

The Claimant filed a Motion For Correction of findings requesting the Commissioner to find that the Claimant's emotional/psychological problems were compensable both:

7

(1) because those problems were caused in the first instance and secondary to the Claimant's physical work injury to his back; and

(2) because the employer's causing emotional/psychological injury as a result of its handling of an employee's Workers' Compensation claim - including its unreasonably contesting that claim - is itself a compensable injury under the Workers' Compensation Act.

The Commissioner failed to correct his Finding and Award as requested and the Claimant duly appealed to the Compensation Review Board. The Compensation Review Board affirmed the Commissioner and this appeal was duly filed.

8

## ISSUE

1.  IS INJURY RESULTING FROM THE EMPLOYER'S HANDLING OF AN INJURED EMPLOYEE'S WORKERS' COMPENSATION CLAIM ITSELF A COMPENSABLE INJURY UNDER THE WORKERS' COMPENSATION ACT?

The purpose of the act is to compensate employees for injuries "arising out of and in the course of employment," without regard to fault, by imposing a form of strict liability on employers. Bakelaar v. West Haven, 193 Conn. 59, 67, 475 A.2d 283 (1984).

This purpose is extrapolated from Connecticut General Statutes §31-284(a), which provides in pertinent part that: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ."

If Connecticut General Statutes §31-284(a) shields the employer from suit in this case, then an employer's misconduct in unreasonably contesting a Workers' Compensation claim causing a Claimant frustration, the delays in resolving his claim, a sense of loss of honor, are compensable.

9

If it is not a shield then <u>Connecticut General Statutes</u> §31-284(a) does not bar an employee's suit against an employer for an employer's misconduct in unreasonably contesting a Workers' Compensation claim. <u>Article First, §10, of the Connecticut Constitution</u> provides that: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

If the opinions expressed by all the doctors in this case that the claimant's emotional/psychological injury was secondary to his physical injury are ignored, the Claimant's case for compensability is indistinguishable from <u>Crochiere v. Board of Education</u>, 227 Conn. 333, 350 (1993) where the court noted the following:

> "The commissioner found, and the review division affirmed, that the plaintiff had met both requirements of proof under the two-part test for causal connection. First, the plaintiff's mental injury "arose out of" his employment as a music teacher, in light of the time, place and circumstances of the injury. The plaintiff's mental injury resulted from the mental stress associated with allegations

10

of his sexual misconduct, allegedly occurring during his music lessons at his place of employment, the Harriet Beecher Stowe Elementary School. Because of the causal connection existing between the injury and the employment, we uphold the finding that the injury arose out of the plaintiff's employment.

Second, the commissioner found that the plaintiff's mental injury occurred "in the course of" his employment as a music teacher. The requirements for satisfying this part are three-fold. The plaintiff's "injury must [have] occurred; (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it.

First, the plaintiff's injury occurred within the period of his employment. Although the plaintiff was suspended in June, 1987, immediately after the allegations were made, he was not terminated until October 21, 1987. During this three month suspension period, while the plaintiff was still employed, several television and radio stations and newspapers reported the allegations. The commissioner found that the **plaintiff's injury was the result of mental stress associated with this publicity**. Second, the commissioner found that the student, S, had made

11

damaging allegations against the plaintiff for conduct that she claimed had occurred at the lessons, a place where the plaintiff was supposed to be. Third, because the plaintiff's conduct giving rise to S's accusations occurred while he was giving lessons, the injury occurred while the plaintiff was attempting to fulfill his duties as a music teacher." (Emphasis added).

The <u>Crochiere</u> court went on to note in foot note 15, page 351 that:

"This case is fundamentally no different from one in which a claimant has been the subject of verbal abuse and sexual advances by a supervisor or coworker. See, e.g., <u>Breeden v. Workmen's Compensation Commissioner</u>, 168 W. Va. 573, 285 S.E.2d 398 (1981); <u>Baker v. Wendy's of Montana, Inc.</u>, 687 P.2d 885 (Wyo. 1984). In both cases, the <u>claimants suffered depression and other nervous injuries as a result of such treatment</u> and received workers' compensation benefits. In this case, the plaintiff was exposed to unsubstantiated allegations of sexual misconduct that resulted in publicity and damage to his reputation. This "harassment" arose out of the plaintiff's performance as a teacher and was in the course of his employment." (Emphasis added).

12

## ISSUE

2.  MAY THE COMMISSIONER DISREGARD THE OPINION OF EXPERTS HE HAS RELIED ON REGARDING THE CAUSE OF AN INJURED EMPLOYEE'S CONDITION?

All medical providers, including both doctors found to be authorized treating physicians (one of whom was chosen by the employer), found the Claimant's emotional/psychological problems to be secondary to his work related back injury. Put another way, all medical providers confirmed that, but for the Claimant's work related back injury he would not have had any emotional/psychological problems.

The employer's treatment of the Claimant after his back injury, (its unreasonable denial of the compensability his back injury claim which caused unnecessary delay in the processing of the Claimant's back injury claim and the employer's failure to pay medical bills from the date of the Claimant's 1989 injury until after the 1994 award) exacerbated the Claimant's emotional and psychological problems.

Medical causation can only be proven by an opinion of a medical expert establishing such connection or excluding all

13

other causes. "Without such expert evidence, the opinion of the layman upon a subject such as the determination of the cause of a cancer in a given case is mere speculation or conjecture. These cannot support causal connection; that must rest upon proven facts." Bates v. Carroll, 99 Conn. 677, 679 (1923).

In the instant case the Claimant's emotional and psychological problems were derived from and secondary to his work related back injury. All medical practitioners related those problems to the back injury. No medical provider excluded the back injury as a cause of the emotional and psychological problems the Commissioner found to exist.

There is no competent evidence to the contrary. The Claimant has demonstrated that, as a matter of reasonable medical probability, it is more likely than not that his emotional and psychological problems were secondary to and therefore caused by the employment incident. Madore v. New Departure Manufacturing Company, 104 Conn. 709 (1926).

It is well established that "expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." Latham &

14

<u>Associates, Inc. v. William Raveis Real Estate, Inc.</u>, 218 Conn. 297, 301, (1991).

"Although it is true that <u>expert</u> medical testimony is generally <u>required</u> in proving the <u>condition</u> from which a person claims to be suffering, this is not the case in obvious or simple matters of everyday life, especially where one is testifying about his own physical condition." <u>State v. Orsini</u>, 155 Conn. 367, 371 (1967).

The Commissioner, by failing to find that Claimant's emotional and psychological problems were secondary to, and therefore caused by, the employment incident substituted his opinion for the opinion of experts. Had the Respondent produced one medical expert to testify that the Claimant's emotional and psychological problems were NOT secondary to, and therefore caused by the work injury there would have been a basis for the Commissioner's failure to find compensability. Without that one report the Commissioner could only have substituted his opinion for the opinion of experts.

LAURENCE V. PARNOFF, P.C., BY

_____
LAURENCE V. PARNOFF

15

## CERTIFICATION RE: BRIEF

DATED: MAY 12, 1997

This is to certify that the original and 15 copies of the foregoing brief were forwarded to the Appellate Court pursuant to Practice Book Section 4064A, and that, in accordance with Practice Book Section 4014, a copy of the foregoing has been served upon all counsel of record, pro se parties, and to all trial judges who rendered a decision which is the subject matter of this appeal on this date, as follows:

Maher & Williams, P.O. Box 550, Fairfield, CT 06430-0550; Juris number: 405775; phone: 203-255-7777; FAX: 203-254-6611

The Honorable James J. Metro, Workers' Compensation Commissioner, Seventh District, 1515 Summer Street, Stamford, CT 06905

PLAINTIFF-APPELLANT, BY:
LAURENCE V. PARNOFF, P.C., BY:

LAURENCE V. PARNOFF

16