FILED

2002 JUN 21  A 11: 22

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTONIO DEOLIVEIRA,          :
     Plaintiff,               :
                            :

VS.                          :    DOCKET NO. 3:02CV893(RNC)
                            :

LIBERTY MUTUAL INSURANCE CO.  :
     Defendant.               :    JUNE 21, 2002

### MEMORANDUM OF LAW IN OPPOSITION
### TO PLAINTIFF'S MOTION TO REMAND

      Pursuant to Rule 9(a)1 of the Local Rules of Civil Procedure for the District of

Connecticut, defendant Liberty Mutual Insurance Company ("Liberty") hereby submits

this Memorandum of Law in Opposition to Plaintiff's Motion to Remand and Affidavit of

Robert G. Seide, Esq. Pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), there is diversity of

citizenship between the parties to this action, this Court has subject matter jurisdiction

over this lawsuit, and removal was proper. Therefore, plaintiff's motion should be

denied.

I.      **BACKGROUND**

      On April 25, 2002, plaintiff Antonio DeOliveira commenced this action against

Liberty in the Connecticut Superior Court for the Judicial District of Fairfield at

Bridgeport, entitled <u>Antonio DeOliveira v. Liberty Mutual Insurance Company</u>, seeking

damages resulting from Liberty's alleged bad faith processing of his claim for benefits

under the Connecticut Worker's Compensation Act ("Act") and alleged unreasonable

delay in paying benefits due under the Act. On May 23, 2002, defendant removed this

case to the United States District Court on the basis of diversity of citizenship, <u>see</u> 28

U.S.C. § 1332. <u>See</u> 28 U.S.C. § 1441(b). The Notice of Removal stated the following:

"Upon information and belief, plaintiff, Antonio DeOliveira, resides at 162 Birdseye

Street, Stratford, Connecticut, and is a citizen of the State of Connecticut" and

"Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its

principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

Defendant is a citizen of the Commonwealth of Massachusetts for diversity purposes. 28

U.S.C. § 1332 (c)(1)." (Notice of Removal, ¶¶ 5 & 6).

On May 31, 2002, plaintiff filed a Motion to Remand this lawsuit to the

Connecticut Superior Court. In his papers, plaintiff alleges that there is no diversity of

citizenship between the parties to this lawsuit. Specifically, without any discussion of the

applicable standard, plaintiff argues that "[t]he basis of the defendants [sic] claim (that it

is not a Connecticut Corporation) is insufficient, in and of itself to satisfy its burden of

removal of the instant case to Federal Court." (Mot. to Remand at 4). In so arguing,

plaintiff ignores the plain language of section 1332 and the jurisprudence applying its

provisions. Because, under the governing standard, Liberty is indisputably a citizen of

the Commonwealth of Massachusetts and therefore is *not* a citizen of Connecticut, this

Court has jurisdiction over this lawsuit and plaintiff's motion must be denied.

## II.    <u>ARGUMENT</u>

Under 28 U.S.C. § 1441(b), a civil action may be removed to federal court based

on diversity of citizenship. To properly remove an action to federal court based on

diversity of citizenship, two requirements must be met. <u>See</u> <u>Mehlenbacher v. Akzo</u>

<u>Nobel Salt, Inc.</u>, 216 F.3d 291, 296 (2d Cir. 2000); <u>Royal Ins. Co. v. Jones</u>, 76 F. Supp.

-2-

2d 202, 204 (D. Conn. 1999). First, the parties in the action must be completely diverse

as to citizenship. See id. Second, the amount in controversy must exceed $75,000.00.

See id. The fact that the amount in controversy exceeds $75,000.00 is not in dispute. It

is undisputed that plaintiff is a citizen of the State of Connecticut. Moreover, the

undisputed facts demonstrate that Liberty is not a citizen of Connecticut. Accordingly,

the requirements for diversity jurisdiction are met, and this Court should deny plaintiff's

Motion for Remand.

    A.    **Under The Standard Set Forth By The Second Circuit, Liberty Mutual Insurance Company's Principal Place Of Business Is Located In The Commonwealth Of Massachusetts.**

The first of the two requirements for diversity jurisdiction are met if the parties

are citizens of different states. See 28 U.S.C. § 1332. Section 1332 provides the

following:

> (a) The district courts shall have regional jurisdiction of all
> civil actions where the matter in controversy exceeds the sum
> or value of $75,000, exclusive of interest and costs, and is
> between – (1) Citizens of different states. . . .

> (c) For the purposes of this section and section 1441 of this
> title -- (1) a corporation shall be deemed to be a citizen of any
> State by which it has been incorporated and of the State
> where it has its principal place of business. . . .

28 U.S.C. § 1332. "It is clear that for purposes both of diversity jurisdiction under 28

U.S.C. § 1332 and removal jurisdiction under 28 U.S.C. § 1441, a corporation is deemed

to be a citizen of the state in which it is incorporated, and of the state where its principal

place of business is located." R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651,

654 (2d Cir. 1979).

"Courts within the Second Circuit use two basic tests for determining a corporation's principal place of business for diversity purposes:  the 'nerve center' test and the 'public impact' or 'place of operations' test.  The appropriate test to be applied is determined by the nature of the corporations in each case." Center for Radio Information, Inc. v. Herbst, 876 F. Supp. 523, 525 (S.D.N.Y. 1995).[1]  "Courts typically utilize the nerve center approach when corporate operations are spread across numerous states and the public impact test when corporate operations are more centralized." Ellis v. Provident Life & Accident Ins. Co., 929 F. Supp. 751, 754 (S.D.N.Y. 1996).

Because Liberty is a major insurance company and its business operations are spread out throughout the nation and the world (see Affidavit of Robert G. Seide, Esq. ("Seide Aff."), ¶ 4), the nerve center test governs the determination of Liberty's principal place of business for diversity purposes.  See Royal Indemnity Co. v. Wyckoff Heights Hospital, 953 F. Supp. 460, 462 (E.D.N.Y. 1996) ("It is undisputed that Royal is a major insurance company, conducting business in all fifty states and has offices throughout the nation. . . . As such, Royal is the paradigm of the 'corporation with operations spread over numerous states,' and the nerve center test applies.").  The nerve center test has been articulated as follows:

---

[1]   These two "tests" are not necessarily inconsistent, but rather reflect differences in focus based upon the nature of a corporation's business.  See R.G. Barry Corp., 612 F.2d at 655; Northeast Nuclear Energy Co. v. General Electric Co., 435 F. Supp. 344, 345-46 (D. Conn. 1977).  As such, the focus is appropriately shifted to place weight on certain corporate activities to "reflect the policy goals of diversity jurisdiction." Northeast Nuclear Energy Co., 435 F. Supp. at 346.

> Where a corporation is engaged in far-flung and varied activities which
> are carried on in different states, its principal place of business is the nerve
> center from which it radiates out to its constituent parts and from which its
> officers direct, control and coordinate all activities without regard to
> locale, in the furtherance of the corporate objective. The test applied by
> our Court of Appeals, is that place where the corporation has an 'office
> from which its business was directed and controlled' -- the place where
> 'all of its business was under the supreme direction and control of its
> officers'.

Scot Typewriter Co. v. Underwood Corp., 170 F. Supp. 862, 865 (S.D.N.Y. 1959); see

R.G. Barry Corp., 612 F.2d at 655 (citing Scot with approval); Ellis, 929 F. Supp. at 753-

54 (same).

Under the principles applied by the courts of the Second Circuit, Liberty's

principal place of business is indisputably located in the Commonwealth of

Massachusetts.   Liberty's home office is located at 175 Berkeley Street in Boston,

Massachusetts. (See Seide Aff., ¶ 6).  Liberty's principal corporate executives maintain

their offices at Liberty's home office located at 175 Berkeley Street in Boston,

Massachusetts. (See id., ¶ 7).   Liberty conducts its corporate governance activities,

including its annual meeting, the production of its annual report, and its Board of

Directors meetings at its home office located at 175 Berkeley Street in Boston,

Massachusetts. (See id., ¶¶ 8-10).   Liberty also directs and controls its regional business

markets, which are the local divisions within Liberty's infrastructure, from its home

office located at 175 Berkeley Street in Boston, Massachusetts.  (See id., ¶ 11).

Further, recent corporate activity confirms the importance of Liberty's home

office located at 175 Berkeley Street, Boston, Massachusetts.  In November of 2001,

Liberty converted into a mutual holding company structure after the approval of its

policyholders obtained at a Special Meeting at its home office located at 175 Berkeley Street, Boston, Massachusetts, and the approval of the Commissioner of Insurance of the Commonwealth of Massachusetts. (See id., ¶ 12(a)).  Also, in March of 2002, Liberty's shareholders approved, during a Special Meeting at its home office located at 175 Berkeley Street, Boston, Massachusetts, Liberty's participation in a mutual holding company structure as a member of Liberty Mutual Holding Company Inc. (See id., ¶ 12(b)).  Approval for this corporate change was also obtained from the Commissioner of Insurance of the Commonwealth of Massachusetts. (See id., ¶ 12(b)).

Liberty's principal place of business is located at 175 Berkeley Street, Boston, Massachusetts.  Liberty's principal corporate officers are based at 175 Berkeley Street, Boston, Massachusetts; control over Liberty's nationwide infrastructure is maintained through its home office located at 175 Berkeley Street, Boston, Massachusetts; major company structure decisions are initiated through its home office located at 175 Berkeley Street, Boston, Massachusetts; and major company changes are subject to the approval of the regulatory authorities for the Commonwealth of Massachusetts. (See id., ¶¶ 6-12). Therefore, without question, Liberty's home office located at 175 Berkeley Street, Boston, Massachusetts "is the nerve center from which [Liberty] radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." Scot Typewriter Co., 170 F. Supp. at 865; see Egan v. American Airlines, Inc., 324 F.2d 565, 566 (2d Cir. 1963) (affirming district court's finding that American Airlines had its principal place of business in New York when "American's 'general over-all management and  business

policy is prescribed in and directed from New York' where it also conducts a substantial

operation; and the record shows that in other states where its physical volume of

operation was larger (due in some part to their greater area), American maintained, for

the most part, only officers concerned with the activities conducted there.").[2]

> **B.    Plaintiff's Evidence Offered In Support Of His Motion Does Not
> Detract From Liberty's "Competent Proof" That It Is Entitled To A
> Federal Forum.**

Plaintiff's allegations are insufficient to rebut the evidence offered by Liberty.

When a party "challenges the jurisdictional predicate for removal," the removing party

must provide "competent proof" of "its right to a federal forum."  R.G. Barry Corp., 612

F.2d at 655.   In light of the foregoing, Liberty respectfully submits that it has done so,

and that plaintiff's contentions do not detract from Liberty's offer of proof.

Plaintiff's evidence fails, under the governing standard set forth by courts in the

Second Circuit, to raise any material dispute regarding the location of Liberty's principal

---

[2]    The fact that Liberty maintains its principal place of business in the
Commonwealth of Massachusetts has been recognized by federal courts in several cases.
See, e.g., Caterpillar, Inc. v. Lewis, 519 U.S. 61, 65 (1996) ("Several months later,
Liberty Mutual Insurance Group, the insurance carrier for Lewis' employer, intervened in
the lawsuit as a plaintiff.   A Massachusetts corporation with its principal place of
business in that State, Liberty Mutual . . . ."); Canedy v. Liberty Mut. Ins. Co., 126 F.3d
100, 103 (2d Cir. 1997) ("defendant is a Massachusetts corporation with its principal
place of business in Massachusetts"); Hitachi Zosen Clearing v. Liberty Mut. Ins. Co.,
No. 92 C 5363, 1996 U.S. Dist. LEXIS 9562, at *1 (N.D. Ill. July 8, 1996) ("defendant
Liberty Mutual Insurance Company, a Massachusetts corporation with its principal place
of business in Boston, Massachusetts"); PNC Bank, N.A. v. Liberty Mut. Ins. Co., 912 F.
Supp. 169, 171 (W.D. Pa. 1996)  ("Liberty Mutual Insurance Company . . . has its
principal place of business in Boston, Massachusetts"); Standard Structural Steel Co. v.
Bethlehem Steel Corp., 597 F. Supp. 164, 169 (D. Conn. 1984) (Clarie, J.) ("The
defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its
principal place of business in Boston, Massachusetts.") .

place of business. Specifically, plaintiff has set forth the following evidence in support of

his contention that "[t]he basis of the defendants [sic] claim (that it is not a Connecticut

Corporation) is insufficient, in and of itself to satisfy its burden of removal of the instant

case to Federal Court" (Mot. to Remand at 4):

> 1.    Liberty "resides" in Wallingford and Glastonbury, Connecticut because it maintains offices at these two locations;
>
> 2.    Liberty conducts "a substantial insurance business" in Connecticut;
>
> 3.    The Connecticut Department of Insurance and the Connecticut Workers' Compensation Commission have personal jurisdiction over Liberty;
>
> 4.    Liberty has authorized the Connecticut Insurance Commissioner to accept service of process on its behalf; and
>
> 5.    Liberty has been named as a defendant in several lawsuits pending in the Connecticut Superior Court.

(See id.).

These five facts offered by plaintiff merely reflect the undisputed, and

unremarkable, proposition that Liberty conducts its insurance business in Connecticut

and is subject to the regulation incident thereto.[3]  Indeed, the fact that Liberty engages in

the conduct described by plaintiff in Connecticut does not distinguish Connecticut in any

meaningful way from every other state in which Liberty conducts business. "For

diversity purposes, a corporation may only have one principal place of business." Royal

Ins. Co. of America v. Caleb V. Smith & Sons, Inc., 929 F. Supp. 606, 608 (D. Conn.

---

[3]    In fact, the Connecticut Department of Insurance lists Liberty's "domicile" state as the Commonwealth of Massachusetts, and its address as 175 Berkeley Street, Boston, Massachusetts. (See Seide Aff., ¶ 13).

1996) (citing <u>Egan v. Am. Airlines, Inc.</u>, 324 F.2d 565 (2d Cir. 1963)).  Arguing that a corporation has more than one principal place of business for the purpose of determining diversity jurisdiction, which is the logical corollary to plaintiff's contentions in this case, "ignores the plain meaning of the concept of a principal place of business and is at odds with the overwhelming consensus of authority that a corporation may have only one principal place of business." <u>Powers v. Fox Television Stations</u>, 907 F. Supp. 719, 722 (S.D.N.Y. 1995) (quoting <u>Bailey v. Grand Trunk Lines New England</u>, 805 F.2d 1097, 1100 (2d Cir. 1986), <u>cert. denied</u>, 484 U.S. 826 (1987)).  "It is not sufficient to allege that the corporation does business in a state, . . . that 'a' principal place of business is in a certain state, . . . or that the corporation is licensed to do business in a state. . . ." <u>Royal Ins. Co. of America v. Caleb V. Smith & Sons, Inc.</u>, 929 F. Supp. at 608 (citations omitted).  The fact that Liberty conducts business in Connecticut is not inconsistent with its maintenance of its principal place of business in Massachusetts.  Therefore, plaintiff has failed to raise any dispute with respect to the location of Liberty's principal place of business.

### III.    CONCLUSION

Because Liberty is incorporated under the laws of the Commonwealth of

Massachusetts, Liberty's principal place of business is located in the Commonwealth of

Massachusetts, and plaintiff is a citizen of the state of Connecticut, there is complete

diversity of citizenship between the parties to this lawsuit.  Therefore, this Court has

subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1332, removal was proper

pursuant to 28 U.S.C. § 1441(b), and plaintiff's Motion to Remand should be denied.

DEFENDANT,
LIBERTY MUTUAL INSURANCE CO.


By _____*Q.Q Managhan*_____
         Daniel L. FitzMaurice (ct 05331)
         Ann Grunbeck Monaghan (ct 16745)
         Day, Berry & Howard LLP
         CityPlace I
         Hartford, CT 06103-3499
         (860) 275-0100
         Its Attorneys

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, postage prepaid, to:

Laurence V. Parnoff, Esq.
Laurence V. Parnoff, P.C.
1566 Park Avenue
Bridgeport, Connecticut  06604
COUNSEL FOR PLAINTIFF ANTONIO DEOLIVEIRA

_____
Ann Grunbeck Monaghan

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTONIO DEOLIVEIRA,                           :
     Plaintiff,                             :
                                    :

VS.                                            :    DOCKET NO. 3:02CV893(RNC)
                                          :

LIBERTY MUTUAL INSURANCE CO.                  :
     Defendant.                             :    JUNE 20, 2002

## AFFIDAVIT OF ROBERT G. SEIDE, ESQ.

I, ROBERT G. SEIDE, ESQ., being duly sworn, depose and say:

    1.    I am over eighteen and understand the obligations of an oath.

    2.    I am employed as Counsel for Liberty Mutual Insurance Company ("Liberty"), 175 Berkeley Street, Boston, Massachusetts, and I have personal knowledge of the matters stated herein.

    3.    Liberty is incorporated under the laws of the Commonwealth of Massachusetts.

    4.    Liberty is a Massachusetts property and casualty insurer pursuant to the provisions of Sections 19F to19W of Chapter 175 of the Massachusetts General Laws, and is in the business of underwriting various types of casualty insurance, including workers' compensation insurance.

5.    Liberty, together with its affiliates, has over 800 offices throughout the world.

6.    Liberty's home office is located at 175 Berkeley Street, Boston, Massachusetts.

7.    Liberty's principal corporate executives are based at its home office located at 175 Berkeley Street, Boston, Massachusetts.

8.    Liberty's Board of Directors meetings are held at its home office located at 175 Berkeley Street, Boston, Massachusetts.

9.    Liberty's annual report is issued from its home office located at 175 Berkeley Street, Boston, Massachusetts.

10.    Liberty holds its annual meeting on the second Wednesday of April at 10:00 a.m. at its home office located at 175 Berkeley Street, Boston, Massachusetts.

11.    Liberty has apportioned responsibility for claims handling into "business markets," which, in turn, report to and are controlled by Liberty's home office located at 175 Berkeley Street, Boston, Massachusetts.

12.    Changes to Liberty's company structure are initiated in Massachusetts and approved by Massachusetts regulatory authorities.  For example:

(a)    On November 28, 2001, Liberty began operating in a mutual holding company structure pursuant to the approval of its policyholders at a Special Policyholder

Meeting held at 175 Berkeley Street, Boston, Massachusetts and, in part, pursuant to the approval of the Commissioner of Insurance of the Commonwealth of Massachusetts.

(b)     On March 15, 2002, the Commissioner of Insurance of the Commonwealth of Massachusetts approved Liberty's mutual holding company legal restructuring plan pursuant to which Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company and Employers Insurance of Wausau converted into stock insurance companies owned by Liberty Mutual Holding Company Inc. The Special Meeting approving this corporate action was held at 175 Berkeley Street, Boston, Massachusetts.

13.     The Connecticut Department of Insurance lists Liberty's "domicile" state as the Commonwealth of Massachusetts, and its address as 175 Berkeley Street, Boston, Massachusetts.

_____
Robert G. Seide, Esq.

Subscribed and sworn to before me this 20th day of June, 2002.

_____
Notary Public
My Commission Expires:



-3-