273 Conn. 487     MAY, 2005     487

DeOliveira v. Liberty Mutual Ins. Co.

# ANTONIO DEOLIVEIRA v. LIBERTY MUTUAL INSURANCE COMPANY
## (SC 17132)
## (SC 17169)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

*Syllabus*

Pursuant to the exclusivity provision (§ 31-284 [a]) of the Workers' Compensation Act, an employer is "not liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ."

The plaintiff, who, in May, 1989, had sustained a back injury while lifting heavy materials at work and had filed for workers' compensation benefits, sought to recover damages in two separate actions against the defendant, the workers' compensation carrier for the plaintiff's employer, for, inter alia, negligence, breach of an implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress as a result of the defendant's handling of the plaintiff's workers' compensation claim. The plaintiff's employer had contested that the injury took place during the course of the plaintiff's employment and had ordered the plaintiff to be examined by an orthopedic physician. Subsequently, between 1991 and 1993, the workers' compensation commissioner for the fourth district held hearings and accepted evidence on the plaintiff's claim. In March of 1995, the commissioner issued his finding and award, concluding that the plaintiff's back injury was compensable and that the employer's denial of the claim was unreasonable, and he awarded the plaintiff $4000 in attorney's fees. The commissioner, however, denied the plaintiff's claim for damages for psychological injuries, which the plaintiff claimed stemmed from his accident at work, the commissioner having found that those injuries were not work-related but, rather, resulted from the plaintiff's frustration with the treatment he received by his employer and the delays in resolving his claim. The commissioner's findings ultimately were affirmed by the workers' compensation review board. In December, 1995, the plaintiff brought an action against the defendant for its actions in contesting the compensability of the plaintiff's claim and unduly delaying payments. The defendant moved for summary judgment, claiming that the plaintiff's claims were barred by § 31-284 (a), and, pursuant to the parties' stipulation, they agreed to reserve certain questions of law for the advice of the Appellate Court. That reservation subsequently was transferred to this court. In 2002, the plaintiff filed a second action in the trial court, asserting identical claims to those in the 1995 action, but directed solely at the defendant's actions following the commissioner's award in 1995. Specifically, the plaintiff claimed that the defendant had delayed making

488                    MAY, 2005                    273 Conn. 487

DeOliveira *v.* Liberty Mutual Ins. Co.

disability payments for approximately three years and had failed to pay the attorney's fees award for almost four years, for which conduct the commissioner had ordered the defendant to pay a penalty and interest for the period of delay. The defendant removed the 2002 action to the United States District Court for the District of Connecticut on diversity grounds and the parties filed a joint petition for certification for the advice of this court of the same questions that had been reserved in the plaintiff's 1995 action. *Held* that this state does not recognize a cause of action against an insurer for bad faith processing of a workers' compensation claim because such a claim is barred by § 31-284 (a) and, therefore, the plaintiff's remedies were limited to those afforded under the Workers' Compensation Act; the prohibition of § 31-284 (a) on damages actions for injuries arising out of and in the course of employment includes any injuries arising out of and in the course of the workers' compensation claims process, and the legislature, by providing remedies under the act for claims of delayed or improperly denied workers' compensation payments, evinced its intention to bar a tort action for the same conduct proscribed and penalized under the act.

Argued February 9—officially released May 3, 2005

*Procedural History*

Action, in two cases, to recover damages for, inter alia, negligence, breach of an implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress in connection with the defendant's allegedly bad faith handling of the plaintiff's claim for workers' compensation benefits, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the first case was removed to the United States District Court for the District of Connecticut and where the court, *Kravitz, J.*, certified to this court five questions of law concerning the viability of a cause of action by a plaintiff employee against a defendant insurer for bad faith processing of a workers' compensation claim; thereafter, in the second case, the trial court, *Levin, J.*, pursuant to the parties' stipulation, reserved those same five questions of law for the advice of the Appellate Court; that reservation thereafter was transferred to this court and the reservations were consolidated.

May 3, 2005                CONNECTICUT LAW JOURNAL                Page 13

273 Conn. 487          MAY, 2005                    489

DeOliveira v. Liberty Mutual Ins. Co.

*Daniel L. FitzMaurice*, with whom was *Michelle I. Turner*, for the appellant (defendant).

*Laurence V. Parnoff*, with whom was *Robert A. Serafinowicz*, for the appellee (plaintiff).

*William F. Gallagher* and *Patricia Nielsen* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. This consolidated action[1] is the culmination of fifteen years of litigation between the plaintiff, Antonio DeOliveira, and the defendant, Liberty Mutual Insurance Company, resulting in multiple lawsuits alleging, in essence, that the defendant unreasonably delayed its processing of the plaintiff's workers' compensation claim, thereby causing him to suffer psychological injuries in addition to his physical injury. The action comes before this court, emanating from two separate actions, in the form of five questions certified to us by the United States District Court for the District of Connecticut, pursuant to General Statutes § 51-199b (d), and concurrently reserved by the Superior Court for advice, pursuant to General Statutes § 52-235.[2] The dispositive

---

[1] The defendant, Liberty Mutual Insurance Company, filed a motion to consolidate the cases, which this court granted for briefing purposes only.

[2] The following five questions were certified to us by the federal District Court and reserved by the trial court:

"A. Does Connecticut law recognize a cause of action against an insurer for bad faith processing of a worker's compensation claim?

"B. If the answer to A is yes, must a plaintiff asserting such a claim prove that the insurer intentionally or deliberately harmed the plaintiff?

"C. Alternatively, if the answer to A is yes, must a plaintiff merely show that the insurer was negligent?

"D. If the answer to A is yes, does the plaintiff's cause of action accrue on the date on which it is determined that the plaintiff's injury is compensable?

"E. Alternatively, if the answer to A is yes, does the plaintiff's cause of action accrue when the allegedly wrongful conduct produced injury, without regard to the date on which, or whether, the plaintiff's injury is found to be compensable?"

490                    MAY, 2005                    273 Conn. 487

DeOliveira *v.* Liberty Mutual Ins. Co.

question is whether Connecticut recognizes a cause of action against an insurer for bad faith processing of a workers' compensation claim. We conclude that such a claim is barred by General Statutes § 31-284 (a),[3] the exclusivity provision of the Workers' Compensation Act (act), and, therefore, the plaintiff's remedies are limited to those afforded under the act. Accordingly, we answer the first question, as certified by the District Court and reserved by the trial court, in the negative.[4]

The record reveals the following facts and tortured procedural history relevant to the questions presented to this court. On May 11, 1989, toward the end of his work shift at Ross and Roberts, Inc. (company), the plaintiff suffered an injury to his lower back when lifting a heavy bag of materials. No one else was present when the accident occurred, and the plaintiff reported the injury to two of his supervisors the following day. Because the company had no physician, the plaintiff

[3] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

Although § 31-284 has been amended since the beginning of the proceedings in this case; see, e.g., Public Acts 1991, No. 91-32, § 7; Public Acts 1996, No. 96-65, § 1; those amendments are not relevant to this appeal. For purposes of clarity, we refer herein to the current revision of the statute.

[4] The other four certified and reserved questions were predicated on an affirmative response to the first question. See footnote 2 of this opinion. Therefore, we need not reach those questions.

273 Conn. 487          MAY, 2005                    491

DeOliveira *v.* Liberty Mutual Ins. Co.

sought treatment first at a health clinic and later from Frank J. Forte, a chiropractor. On May 25, 1989, the plaintiff filed for workers' compensation benefits.

On May 31, 1989, the company notified the plaintiff and the workers' compensation commission (commission) that it intended to contest that the plaintiff's injury arose in the course of his employment. The company thereafter directed the plaintiff to be evaluated by Donald Dworken, an orthopedic specialist. Dworken confirmed the plaintiff's version of events as the source of his injury. Forte also opined in a report dated June 7, 1990, that the plaintiff's back injury was directly and causally related to the accident at work. The plaintiff continued treatment with Forte, Dworken and two other physicians for his back injury. Dworken released the plaintiff for light duty on September 11, 1989. The plaintiff unsuccessfully attempted to secure work within his job restrictions.

On December 20, 1989, the plaintiff sought treatment by Mark Gang, a psychiatrist, for emotional problems, including depression. Gang later referred the plaintiff to another psychiatrist for treatment. Both psychiatrists concluded that the cause of the plaintiff's depression was twofold, in part caused by his inability to work as a result of his injury and in part caused by a loss of honor and self-esteem as a result of the way he had been treated by the company regarding his claim and the nonpayment of benefits. Gang concluded that the plaintiff suffered from symptoms of posttraumatic stress and that, as of May, 1991, he was totally disabled as a result of his emotional impairment.

In October, 1990, the plaintiff filed an action in Superior Court against the company and the defendant, as the company's workers' compensation insurer, alleging that they had acted negligently, recklessly, intentionally and in bad faith by contesting his workers' compensa-

CONNECTICUT LAW JOURNAL

492          MAY, 2005          273 Conn. 487

DeOliveira *v.* Liberty Mutual Ins. Co.

tion claim. He further alleged that the company and the defendant were liable for both his physical injury and his psychological injuries that stemmed from their bad faith handling of his claim.

Between February, 1991, and January, 1993, the workers' compensation commissioner for the fourth district (commissioner) held hearings and accepted evidence on the plaintiff's workers' compensation claim. The plaintiff sought compensation for both his back injury and his psychological injury, claiming that the latter stemmed from his accident. He also sought, as a result of the defendant's unreasonable contesting of his back injury claim, interest on payments withheld, civil penalties and attorney's fees. In June, 1994, the parties agreed to delay the commissioner's decision in hopes of resolving the case by stipulation. On March 30, 1995, the commissioner issued his finding and award. The commissioner found that the plaintiff's back injury was compensable under the act. The commissioner further found that the company's denial of the compensability of the plaintiff's physical injury was unreasonable and caused unnecessary delay, and awarded the plaintiff $4000 in attorney's fees. With respect to the plaintiff's psychological injury, the commissioner found that that injury was not substantially a result of his work-related injury, but, rather, a result of his frustration with the treatment he had received by the company and the delays in resolving his claim. Accordingly, the commissioner found that the company's denial of compensability with respect to the psychological injury was reasonable and declined to award any penalties for the company's actions relating to that claim. Thereafter, pursuant to General Statutes § 31-301, the plaintiff appealed from the commissioner's decision to the compensation review board (board) regarding the compensability of his psychological injury.

273 Conn. 487          MAY, 2005          493

DeOliveira *v.* Liberty Mutual Ins. Co.

On December 8, 1995, the plaintiff's action in Superior Court was dismissed under the court's dormancy program. On December 13, 1996, the board affirmed the commissioner's decision, concluding that the plaintiff's psychological injury was not work-related because his employment was not the proximate cause of that injury. The Appellate Court subsequently affirmed the board's decision; *DeOliveira* v. *Ross & Roberts, Inc.*, 47 Conn. App. 919, 703 A.2d 1191 (1997); and this court thereafter denied the plaintiff's petition for certification to appeal from that decision. *DeOliveira* v. *Ross & Roberts, Inc.*, 243 Conn. 965, 707 A.2d 1265 (1998).

On December 20, 1995, the plaintiff commenced a second action in Superior Court, this time against the defendant only. In a seven count revised complaint directed at the defendant's actions in contesting compensability and unduly delaying payments, the plaintiff asserted claims of negligent, reckless and intentional conduct, implied breach of the covenant of good faith, negligent and intentional infliction of emotional distress and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Thereafter, the defendant moved for summary judgment on the ground, inter alia, that the plaintiff's claims were barred by the exclusivity provision of the act, and the plaintiff filed a cross motion for summary judgment. At an April 11, 2002 hearing before the trial court, *Gallagher, J.*, the parties agreed to arbitrate the claims, and concurrently to reserve certain questions of law underlying the claims to the Appellate Court.

In April, 2002, the plaintiff filed a third action in Superior Court, asserting identical claims to those asserted in the pending 1995 action, but directed solely at the defendant's post-1995 conduct. Since the commissioner's award in 1995, the defendant had failed to make the disability payments owed to the plaintiff until April, 1998, and had failed to pay the $4000 attorney's fee

494                MAY, 2005           273 Conn. 487

DeOliveira v. Liberty Mutual Ins. Co.

penalty until September, 1999. As a result, upon application by the plaintiff, in August, 2001, the commissioner ordered the defendant to pay a 20 percent penalty and 12 percent interest for the period of delay on the payment of benefits, as well as 10 percent interest for the period of delay on the payment of attorney's fees.

The defendant removed the 2002 action to the United States District Court for the District of Connecticut on diversity grounds. On December 5, 2003, after considerable legal wrangling in both the state and federal courts, the parties concurrently filed in the Superior Court a joint motion for reservation of five questions to the Appellate Court and filed in the District Court a joint petition for certification of the same five questions to this court. The trial court, *Levin, J.*, and the District Court, Kravitz, J., respectively, granted the motion and the petition. This court accepted the District Court's reservation and thereafter transferred the Superior Court case from the Appellate Court to this court.

The dispositive question before this court is whether Connecticut recognizes a cause of action against an insurer for bad faith processing of a workers' compensation claim.[5] The plaintiff asserts that a tort action may be brought because a psychological injury caused by the tortious handling of a workers' compensation claim is not a compensable work-related injury under the act and, hence, the commission lacks jurisdiction over such claims. The plaintiff further asserts that intentional torts generally are not covered under the act. Thus, because such injuries are not within the scope of the act, the

---

[5] Our Superior Court decisions essentially have been divided equally on this issue. See *Spencer* v. *Health Direct, Inc.*, Superior Court, judicial district of New London, Docket No. 544356 (January 8, 1999) (23 Conn. L. Rptr. 675) (listing decisions on both sides of issue); see generally *Brosnan* v. *Sacred Heart University*, Superior Court, judicial district of Fairfield, Docket No. 333544 (October 21, 1997) (20 Conn. L. Rptr. 509) (discussing at length arguments presented on both sides of issue).

May 3, 2005          CONNECTICUT LAW JOURNAL          Page 19

273 Conn. 487          MAY, 2005          495

DeOliveira *v.* Liberty Mutual Ins. Co.

plaintiff contends that the exclusivity provision of the act is inapplicable. Finally, the plaintiff contends that a person who is injured by such conduct has no redress available under the act because the penalties imposed for undue or unreasonable delays merely punish the wrongdoing insurer or employer, but do not compensate the claimant for the personal injuries and harm actually sustained as a result of the delays.

The defendant responds, in support of its claim that the exclusivity provision of the act bars this action, that the commission's jurisdiction is not limited to claims for injuries that ultimately are compensable, but extends to alleged acts of misconduct in the course of workers' compensation proceedings. Specifically, it contends that the act provides a remedy for misconduct related to the handling of claims and thereby reflects a legislative intent that the remedy for delayed payment, even if vexatious, remain within the purview of the workers' compensation scheme. The defendant further contends that employees are not entitled to redress in tort for every injury either that is not compensable or for which compensation is inadequate under the act. We agree with the defendant.

We begin with the exclusivity provision of the act, which provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ." General Statutes § 31-284 (a). The

496                    MAY, 2005              273 Conn. 487

DeOliveira v. Liberty Mutual Ins. Co.

exclusivity provision "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation." *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000).

Thus, the exclusivity provision applies to an employee's " '[p]ersonal injury' " that " '[a]ris[es] out of and in the course of his employment,' " both terms that are defined under the act and are prerequisites to compensability. General Statutes § 31-275 (1) and (16). In the present case, however, the commissioner found and the board affirmed that the plaintiff's psychological injury was not compensable. Specifically, the board concluded, when reviewing the plaintiff's appeal, that his emotional injury was not proximately caused by his employment.[6] Thus, the injury for which the plaintiff seeks damages is not, strictly speaking, a personal injury that arises out of and in the course of employment and, accordingly, would appear to fall outside the scope of the exclusivity provision.

The legislature, however, expressly has conferred jurisdiction upon the commission to adjudicate claims related to untimely payment of benefits and has devel-

---

[6] Although it is not entirely clear from the record, based on the pertinent dates relating to the plaintiff's injuries, we presume that the commissioner and the board reviewed the plaintiff's emotional impairment claim under the statute in effect on January 1, 1993. In that statute, "personal injury" was defined without expressly excluding any type of emotional injuries, thus requiring only that the injury was work-related. See General Statutes (Rev. to 1993) § 31-275 (16) (" '[p]ersonal injury' or 'injury' includes, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease"). In 1993, the legislature amended the statute to provide: " 'Personal injury' or 'injury' shall not be construed to include . . . a mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease . . . ." Public Acts 1993, No. 93-228, § 1, now codified at General Statutes § 31-275 (16) (B) (ii).

May 3, 2005                CONNECTICUT LAW JOURNAL                Page 21

273 Conn. 487          MAY, 2005                497

DeOliveira v. Liberty Mutual Ins. Co.

oped a scheme under which remedies may be provided. As a general matter, the commissioners have jurisdiction to "hear all claims . . . arising under [the act] . . . ." General Statutes § 31-278. Specifically, the commissioners have the authority to hear an employee's claim that, "through the fault or neglect of an employer or insurer, the adjustment or payment of compensation due . . . [has been] unduly delayed" and to assess a civil penalty of up to $500 for each case of delay. General Statutes § 31-288 (b). If an employer or insurer unreasonably contests liability, the commissioners have authority to award attorney's fees to the employee. General Statutes § 31-300. Similarly, if a commissioner determines that, "through the fault or neglect of the employer or insurer," payments or adjustments in payment have been delayed "unduly" or "unreasonably," the commissioner may include interest and attorney's fees in an award. General Statutes § 31-300. Finally, if an employer fails to make payments due under an award or voluntary agreement within the statutorily prescribed period, a commissioner shall assess "a penalty for each late payment, in the amount of [20 percent] of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter." General Statutes § 31-303.

The legislature has empowered the commission to take other measures to ensure prompt payment of benefits and to address the wrongful withholding of benefits. Specifically, the legislature mandated that the commission promulgate regulations to assure prompt payment of benefits. General Statutes § 31-295 (c). The attorney general, upon notice from the commission, also is authorized to initiate civil actions to enforce untimely payments. See General Statutes §§ 31-288 (e), 31-289a (a) and 31-289b.

Thus, it appears that, in the present case, there is a conflict between the workers' compensation provi-

498                    MAY, 2005          273 Conn. 487

DeOliveira *v.* Liberty Mutual Ins. Co.

sions. On the one hand, the plaintiff has alleged an injury that appears to fall outside the general terms of the exclusivity provision, as that injury was deemed not to have been causally connected to the plaintiff's employment. On the other hand, there exists a detailed legislative scheme specifically addressing the harm for which the plaintiff seeks to bring an action for damages. As we recently made clear in *Mello* v. *Big Y Foods, Inc.*, 265 Conn. 21, 31, 826 A.2d 1117 (2003), however, the mere fact that an injury is not compensable under the act does not mean necessarily that an action for damages may be brought and that the exclusivity provision does not bar such an action. Thus, in determining whether a cause of action is barred by the exclusivity provision, the appropriate question is whether the act is applicable to the injury at issue. In such a case, the ultimate question is one of legislative intent. As such, we exercise plenary review.[7] *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 230, 842 A.2d 1089 (2004).

In construing workers' compensation law, "we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act." *Biasetti* v. *Stamford*, 250 Conn. 65, 74 n.7, 735 A.2d 321

[7] Our legislature recently has enacted General Statutes § 1-2z, which prescribes the method of interpretation by which this court is to interpret statutes when the text is plain and unambiguous. Because the parties in the present case do not claim that the relevant statutory text, along with the relationship of that text to other statutes, is plain and unambiguous, our analysis is not limited by this new legislation. We apply, therefore, our well established process of statutory interpretation, under which "we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 230–31, 842 A.2d 1089 (2004).

273 Conn. 487     MAY, 2005     499

DeOliveira v. Liberty Mutual Ins. Co.

(1999). In so doing, we are mindful that the act "compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985). Accordingly, "[t]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." Id.

In our view, in order to give a reasonable sphere of operation to the scheme the legislature has prescribed for the commission's adjudication of claims of delayed or improperly denied payment, we must read the exclusionary provision so as not to countermand or diminish the force of the provisions setting forth the specific remedies provided to address such conduct. See *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) ("legislature is always presumed to have created a harmonious and consistent body of law" [internal quotation marks omitted]). In other words, by providing remedies for such conduct, the legislature evinced its intention to bar a tort action for the same conduct proscribed and penalized under the act. See *Cain* v. *National Union Life Ins. Co.*, 290 Ark. 240, 241, 718 S.W.2d 444 (1986) (20 percent penalty for late payment and potential requirement of bond to ensure payment evidence of exclusive remedies under act); *Bright* v. *Nimmo*, 253 Ga. 378, 381, 320 S.E.2d 365 (1984) (15 percent penalty for late payment and award of attorney's fees evidence that legislature intended exclusive remedy under act); *Cook* v. *Optimum/Ideal Managers, Inc.*, 130 Ill. App. 3d 180, 186–87, 473 N.E.2d 334 (1984) (remedies including penalty for unreasonably delayed compensation payments implies legislative intent to bar tort action for damages). To conclude otherwise would create too great a risk of upsetting the careful balance set by the legislature between providing an efficient, affordable system for prompt resolution of claims, pro-

DeOliveira *v.* Liberty Mutual Ins. Co.

viding compensation for unduly delayed claims and punishing wrongful conduct. Indeed, construing the act to permit a tort action for an injury for which a remedial process is provided under the act "would invite the indefinite prolonging of litigation and risk double recoveries and inconsistent findings of fact, a result which the legislature, in enacting a system of compensation in place of common law remedies, certainly wished to avoid." *Robertson* v. *Travelers Ins. Co.*, 95 Ill. 2d 441, 451, 448 N.E.2d 866 (1983).

A review of the legislative history of the provisions of the act addressing delayed payments evinces not only that the legislature, when enacting these provisions, was mindful that employers and insurers were in fact delaying payments, but also that it was aware of the stress and anxiety that naturally could result from such delays. As the legislature was considering various remedial measures over the years, legislators and private individuals have attested to the misconduct by employers and insurers in delaying payment.[8] Com-

---

[8] The legislative history of the act is replete with testimony reflecting the wide range of horrific circumstances that have resulted from an insurer's nonpayment of benefits—loss of a home, inability to buy food and clothing, and commitment to a psychiatric facility—and many instances of repeated and egregious conduct by insurers ranging from a failure to keep records necessary to process a claim to a failure to appear for claims hearings. See, e.g., Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 3, 1979 Sess., p. 713, remarks of Representative Dominick Sieszkowski; id., pp. 750–52, remarks of Dominick Badolato; Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1984 Sess., pp. 186–87, remarks of Paul Gerrou and Representative William Kiner; id., pp. 199–205, remarks of Henry Taylor; id., pp. 211–13, remarks of Lee Arnold; id., pp. 223–25, remarks of Edward Grady; id., pp. 228–31, remarks of Betty Webber; id., pp. 253–55, remarks of Robert Carter; id., pp. 263–64, remarks of John Kistell; 27 H.R. Proc., Pt. 9, 1984 Sess., p. 3258, remarks of Representative Kiner; Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1988 Sess., pp. 249–52, remarks of Edward Sikorski; id., pp. 264–65, remarks of Joy Boylan; Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., pp. 495–96, remarks of Richard Roberts; Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 4, 1993 Sess., p. 1347, remarks of Cynthia Lee.

273 Conn. 487        MAY, 2005        501

DeOliveira *v.* Liberty Mutual Ins. Co.

mon sense would suggest that, because workers' compensation benefits provide a substitute for wages, emotional distress inevitably would result from the withholding of such benefits that may indeed provide the only means by which beneficiaries can pay their bills and expenses. Thus, the legislature clearly was aware of the scope and nature of this problem and presumably crafted the remedies that it deemed fit. In the present case, the plaintiff sought and received relief afforded under the act by way of an award of interest, attorney's fees and a 20 percent penalty.

In light of the remedies expressly provided, "we decline to construe § 31-284 as not barring such actions . . . [because] to do so would in this case usurp the legislative function. . . . [A] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. . . . Neither moral aversion to the [insurer's] act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the Legislature." (Internal quotation marks omitted.) *Mingachos* v. *CBS, Inc.,* supra, 196 Conn. 106.

Our conclusion that Connecticut does not recognize a cause of action for bad faith processing of a workers' compensation claim, and our rationale in reaching that conclusion, is in accord with the majority of courts to consider this issue. See *Whitten* v. *American Mutual Liability Ins. Co.,* 468 F. Sup. 470, 474–76 (D. S.C. 1977), aff'd, 594 F.2d 860 (4th Cir. 1979); *Liberty Mutual Ins. Co.* v. *Coleman,* 313 Ark. 212, 213–14, 852 S.W.2d 816 (1993); *Marsh & McLennan, Inc.* v. *Superior Court,* 49 Cal. 3d 1, 10, 774 P.2d 762, 259 Cal. Rptr. 733 (1989); *Garrett* v. *Washington Air Compressor Co.,* 466 A.2d 462, 463–64 (D.C. 1983); *Inservices, Inc.* v. *Aguilera,* 837 So. 2d 464, 465–68 (Fla. App. 2002), review granted, 847 So. 2d 975 (Fla. 2003); *Bright* v. *Nimmo,* supra, 253

502                    MAY, 2005                    273 Conn. 487

DeOliveira *v.* Liberty Mutual Ins. Co.

Ga. 381; *Walters* v. *Industrial Indemnity Co. of Idaho*, 127 Idaho 933, 935–36, 908 P.2d 1240 (1996); *Echelbarger* v. *Dixon Publishing Co.*, 221 Ill. App. 3d 457, 458–59, 582 N.E.2d 295 (1991), appeal denied, 144 Ill. 2d 632, 591 N.E.2d 21 (1992); *Kelly* v. *CNA Ins. Co.*, 729 So. 2d 1033, 1039 (La. 1999);[9] *Kelly* v. *Raytheon, Inc.*, 29 Mass. App. 1000, 1001–1002, 563 N.E.2d 1372 (1990), review denied, 409 Mass. 1102, 566 N.E.2d 1131 (1991); *Hajciar* v. *Crawford & Co.*, 142 Mich. App. 632, 638–39, 369 N.W.2d 860 (1985);[10] *Wood* v. *Union Electric Co.*, 786 S.W.2d 613, 615 (Mo. App. 1990); *Ihm* v. *Crawford & Co.*, 254 Neb. 818, 821–25, 580 N.W.2d 115 (1998); *Dunlevy* v. *Kemper Ins. Group*, 220 N.J. Super. 464, 469–70, 532 A.2d 754 (1987), cert. denied, 110 N.J. 176, 540 A.2d 174 (1988); *Kuykendall* v. *Gulfstream Aerospace Technologies*, 66 P.3d 374, 376–77 (Okla. 2002); *Santiago* v. *Pennsylvania National Mutual Casualty Ins. Co.*, 418 Pa. Super. 178, 193, 613 A.2d 1235 (1992); *Cianci* v. *Nationwide Ins. Co.*, 659 A.2d 662, 667–70 (R.I. 1995); *Gunderson* v. *May Dept. Stores Co.*, 955 P.2d 346, 348–52 (Utah App. 1998).[11] Several jurisdic-

[9] Louisiana has adopted a narrow exception to the exclusivity provision for intentional conduct on the part of an employer for refusing to pay for medical treatment, when the employer knows that, without such treatment, the employee's condition would be terminal. *Kelly* v. *CNA Ins. Co.*, supra, 729 So. 2d 1039.

[10] Michigan permits an action for intentional infliction of emotional distress only when the action is not dependent on facts related to a breach of the insurance contract to pay benefits. *Hajciar* v. *Crawford & Co.*, supra, 142 Mich. App. 638–39; see also *Wright* v. *DaimlerChrysler Corp.*, 220 F. Sup. 2d 832, 845 (E.D. Mich. 2002) ("wrongful, even bad faith refusal to offer benefits to which [p]laintiff is entitled is not tortious").

[11] The Utah Court of Appeals explained that the Utah Supreme Court had suggested in dicta that a bad faith claim might be permitted when there was extreme conduct separate and apart from a mere failure to pay benefits. *Gunderson* v. *May Dept. Stores Co.*, supra, 955 P.2d 351–52. Several jurisdictions have recognized the possibility of such claims. See, e.g., *Oliver* v. *Liberty Mutual Ins. Co.*, 548 So. 2d 1025, 1026 (Ala. 1989) (claim for bad faith failure to pay benefits is barred by exclusivity provisions, but claim based on tort of outrage is not barred); *Zurich Ins. Co.* v. *Mitchell*, 712 S.W.2d 340, 344 (Ky. 1986) (same); *Wolf* v. *Scott Wetzel Services, Inc.*, 113 Wash. 2d 665, 675, 678, 782 P.2d 203 (1989) (same).

273 Conn. 487          MAY, 2005          503

DeOliveira v. Liberty Mutual Ins. Co.

tions also have enacted statutes expressly prohibiting such actions. See Ind. Code Ann. § 22-3-4-12.1 (a) (Michie Sup. 2004) (conferring exclusive jurisdiction on commission to determine if employer or insurer "has acted with a lack of diligence, in bad faith, or has committed an independent tort in adjusting or settling the claim for compensation"); Nev. Rev. Stat. § 616D.030 (2003)[12] (precluding cause of action against insurer for violating any provision of act); N.M. Stat. Ann. §§ 52-1-6 (E) and 52-1-28.1 (Michie 2003) (providing that claims alleging unfair or bad faith claim processing practices may be filed under act, which provides exclusive remedy for such claims); Wis. Stat. Ann. § 102.18 (2) (bp) (West 2004)[13] (providing penalty as exclusive remedy against employer or insurer if suspension or termination of payments, or failure to make payments results from malice or bad faith); but see Kan. Stat. Ann. § 44-5,121 (2000) (authorizing cause of action for economic loss caused by fraudulent or abusive act relative to workers' compensation).

We agree with the California Supreme Court that "injuries arising out of and in the course of the workers' compensation claims process fall within the scope of the exclusive remedy provisions because this process is tethered to a compensable injury. Indeed, every employee who suffers a workplace injury must go through the claims process in order to recover compen-

---

[12] The Nevada Supreme Court explained that the legislature had adopted the statute barring actions against insurers directly in response to one of its decisions in which it had recognized limited tort actions against workers' compensation insurers for bad faith processing of workers' compensation claims based on a determination that the existing statutory fines were insufficient to compensate injured workers. Madera v. State Industrial Ins. System, 114 Nev. 253, 256–57, 956 P.2d 117 (1998).

[13] The Wisconsin Court of Appeals indicated that the legislature had enacted the exclusive bad faith penalty in reaction to a decision by the Wisconsin Supreme Court creating an exception to the exclusivity principle for bad faith claims. Messner v. Briggs & Stratton Corp., 120 Wis. 2d 127, 132–33, 353 N.W.2d 363 (App. 1984).

504                MAY, 2005        273 Conn. 487

DeOliveira v. Liberty Mutual Ins. Co.

sation." *Charles J. Vacanti, M.D., Inc.* v. *State Compensation Ins. Fund*, 24 Cal. 4th 800, 815, 14 P.3d 234, 102 Cal. Rptr. 2d 562 (2001); see also *Santiago* v. *Pennsylvania National Mutual Casualty Ins. Co.*, supra, 418 Pa. Super. 193 (alleged tortious acts of insurer in failing to pay benefits, which in turn gave rise to emotional impairment, were " 'completely intertwined' " with original compensable injury); *Wolf* v. *Scott Wetzel Services, Inc.*, 113 Wash. 2d 665, 674, 782 P.2d 203 (1989) (compensable injury under act was necessary predicate to claim for wrongful delay or termination of benefits). It also is clear that "[i]nsurer activity intrinsic to the workers' compensation claims process is also a risk contemplated by the compensation bargain. Thus, insurer actions 'closely connected to the payment of benefits' fall within the scope of the exclusive remedy provisions." *Charles J. Vacanti, M.D., Inc.* v. *State Compensation Ins. Fund*, supra, 821. Consistent with this reasoning, we conclude that we must construe the exclusionary provision's prohibition on damages actions for injuries "arising out of and in the course of . . . employment" to include injuries arising out of and in the course of the *workers' compensation claims process.*

We are mindful that there is a substantial minority position that a cause of action for bad faith processing of a workers' compensation claim is not barred. See 6 A. Larson, Workers' Compensation Law (2004) § 104.05 [3], pp. 104-30 through 104-34. There is no consistent rationale, but among the reasons cited in these cases are that: (1) the injury does not arise out of, or in the course of, employment; (2) the remedy provided under the act is inadequate to compensate for the harm; and (3) the act does not apply to intentional torts or to particularly egregious or outrageous conduct. See, e.g., *Buote* v. *Verizon New England*, 190 F. Sup. 2d 693, 705–707 (D. Vt. 2002) (injury does not arise out of

273 Conn. 487          MAY, 2005                    505

*DeOliveira v. Liberty Mutual Ins. Co.*

employment and remedy is inadequate); *Franks* v. *United States Fidelity & Guaranty Co.*, 149 Ariz. 291, 296, 718 P.2d 193 (App. 1985) ("bad faith by a carrier in the handling of a workers' compensation claim does not arise out of and in the course of employment"); *Vaughan* v. *McMinn*, 945 P.2d 404, 405–407 (Colo. 1997) (bad faith processing is not injury arising in course of employment); *Gallagher* v. *Bituminous Fire & Marine Ins. Co.*, 303 Md. 201, 211–12, 492 A.2d 1280 (1985) (mere claim of intentional nonpayment is barred but intentional to degree of outrageous is not barred); *Southern Farm Bureau Casualty Ins. Co.* v. *Holland*, 469 So. 2d 55, 58 (Miss. 1984) (inadequacy of remedy as compensation and deterrence); *Kirkup* v. *American International Adjustment Co.*, 160 App. Div. 2d 676, 677, 553 N.Y.S.2d 454 (1990) (claim for bad faith nonpayment is barred, but claim of intentional infliction of emotional distress is not barred because act does not preclude intentional torts).

We already have explained why, under our statutory scheme, the first of these reasons is only the beginning, not the end, of our inquiry. We also do not find the other reasons compelling. The fact that the remedy provided by the legislature under the act may be considered inadequate does not permit us to overlook the limits set by the legislature. See *Jett* v. *Dunlap*, 179 Conn. 215, 222, 425 A.2d 1263 (1979) (concluding it is not material consideration that "compensation act provides a lesser return than the plaintiff believes a jury would have awarded against his employer"). "Substantively, it is an essential part of the workers' compensation bargain that an employee, even one who has suffered  .  .  .  an offensive injury, relinquishes his or her potentially large common-law tort damages in exchange for relatively quick and certain compensation." *Driscoll* v. *General Nutrition Corp.*, supra, 252 Conn. 227.

506                MAY, 2005        273 Conn. 487

DeOliveira *v.* Liberty Mutual Ins. Co.

With respect to the intent element, this court previously has recognized a narrow exception to the exclusivity provision for intentional torts. *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 104, 639 A.2d 507 (1994). That exception was grounded, however, in the "accidental" injury language of the act; see General Statutes § 31-275 (1); and the fact that such conduct falls well outside the terms of the bargain struck under the act.[14] See *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 279, 698 A.2d 838 (1997); see generally 6 A. Larson, supra, § 103.01, pp. 103-2 through 103-5 (discussing employer liability for intentional torts). By contrast, the "fault or neglect" language in the provisions addressing improperly delayed or denied payments; General Statutes §§ 31-288 (b) and 31-300; is broad enough to encompass the bad faith processing of a workers' compensation claim. See *Zurich Ins. Co.* v. *Mitchell*, 712 S.W.2d 340, 342 (Ky. 1986) ("allegation that the benefits have been unpaid, whether negligently, recklessly or intentionally constitutes a denial without reasonable ground"); *Kelly* v. *Raytheon, Inc.*, supra, 29 Mass. App. 1002 (noting with respect to statutory penalty for failure to pay without justification that, "to say that the failure to pay was 'vexatious,' or not in good faith, or intentional, or negligent, or unfair, adds nothing

---

[14] In *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 257–58, 698 A.2d 838 (1997), we discussed the high threshold for the type of intent necessary for an intentional tort action to avoid the exclusionary provision—the employer actually must have intended to injure the plaintiff or intentionally had created a dangerous condition that made the plaintiff's injuries substantially certain to occur. We explained that, "[s]ince the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. . . . What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Citation omitted; internal quotation marks omitted.) Id., 279.

273 Conn. 487          MAY, 2005          507

DeOliveira *v.* Liberty Mutual Ins. Co.

of substance to the claim that the delay was not justified"). Indeed, the presence of penalties in the act reflects the legislature's cognizance of wrongful, not merely negligent, conduct.

We recognize that there could be an instance in which an insurer's conduct related to the processing of a claim, separate and apart from nonpayment, might be *so egregious* that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act. Some other jurisdictions have recognized such a limitation. See, e.g., *Unruh* v. *Truck Ins. Exchange,* 7 Cal. 3d 616, 620–21, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972) (insurer's agent misrepresented identity to claimant, caused her to become emotionally involved with him and induced her to engage in unusual activities beyond her normal physical capabilities while another person filmed her, resulting in aggravation of her physical injury and physical and mental breakdown requiring hospitalization upon claimant discovering deceit); *Young* v. *Hartford Accident & Indemnity Co.,* 303 Md. 182, 193, 492 A.2d 1270 (1985) (plaintiff who suffered emotional trauma after being assaulted at work alleged that carrier, in attempt to reduce its monetary exposure, insisted on psychiatric examination with deliberate intent that plaintiff either commit suicide or drop her claim, and plaintiff thereafter attempted suicide). The present case, however, presents no such claim.

The first question, as certified by the District Court and reserved by the trial court, is answered in the negative.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.

———————————————