UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTONIO DEOLIVEIRA, | : | DOCKET NO. 3:02 CV 893(MRK) |
| Plaintiff, | : | |
| VS. | : | |
| LIBERTY MUTUAL INSURANCE CO. | : | |
| Defendant. | : | JUNE 9, 2005 |

**DEFENDANT'S LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF ITS ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Defendant Liberty Mutual Insurance Company ("Liberty Mutual") has moved, in the alternative, to dismiss the complaint or for summary judgment. In support of its Motion for Summary Judgment and pursuant to Rule 56(a)(1) of the Local Civil Rules of the United States District Court for the District of Connecticut, defendant respectfully submits this statement of material facts as to which there is no genuine issue to be tried:

1. Plaintiff filed this action ("*DeOliveira III*") on or about April 25, 2002. (FitzMaurice Aff., ¶ 2.)

2. In April 2002, there was a similar case that plaintiff had filed against Liberty Mutual, which was pending in the Connecticut Superior Court, Docket No. CV-96 032 93 90 S ("*DeOliveira II*"). (FitzMaurice Aff., ¶ 3.)

3. The Revised Complaint in *DeOliveira II* purports to assert claims for Liberty Mutual's alleged misconduct styled as follows: (1) "negligence claim;" (2) "intentional tortious conduct claim;" (3) "reckless conduct claim;" (4) "breach of implied covenant of good faith claim;" (5) "intentional infliction of emotional distress claim;" (6) "negligent infliction of

emotional distress claim;" and (7) "CUIPA allegations as basis for CUTPA claim." (Revised Complaint in *DeOliveira II*, copy attached as Ex. A to FitzMaurice Aff.)

4. The Complaint in *DeOliveira III* asserts claims identical to those in the Revised Complaint in *DeOliveira II*. (*Compare* Complaint *with* Revised Complaint, Ex. A to FitzMaurice Aff.); *see also DeOliveira v. Liberty Mutual Ins. Co.*, 273 Conn. 487, 493 (2005) ("In April, 2002, the plaintiff filed a third action in Superior Court, asserting identical claims to those asserted in the pending 1995 action, but directed solely at the defendant's post-1995 conduct.")

5. In April 2002, during jury selection in *DeOliveira II*, the parties agreed, on the record, to arbitrate based on the existing "law of the case" and concurrently to reserve certain legal questions for appellate advice. The transcript from that hearing sets forth the parties' agreement in detail. (*See* Transcript of April 11, 2002, copy attached as Ex. B to FitzMaurice Aff.)

5. Plaintiff's counsel subsequently refused to sign a proposed joint stipulation for reservation that defendant's counsel prepared. (FitzMaurice Aff., ¶ 6.)

6. On December 5, 2003, with the assistance of this Court, the parties reached a procedural agreement that allowed this case and *DeOliveira II* to proceed. (FitzMaurice Aff., ¶ 7, and Exs. C and D (Case Management Agreement and Joint Petition for Certification)).

7. The Case Management Agreement set out a plan by which the parties in *DeOliveira II* would petition the Superior Court to reserve certain legal issues for appellate advice, and in *DeOliveira III* this Court would certify the same questions to the Connecticut Supreme Court. (Case Management Agreement and Joint Petition for Certification).

8. The certified/reserved issues were as follows:

    A.    Does Connecticut law recognize a cause of action against an insurer for bad faith processing of a workers' compensation claim?

    B.    If the answer to A is yes, must a plaintiff asserting such a claim prove that the insurer intentionally or deliberately harmed the plaintiff?

    C.    Alternatively, if the answer to A is yes, must a plaintiff merely show that the insurer was negligent?

    D.    If the answer to A is yes, does the plaintiff's cause of action accrue on the date on which it is determined that the plaintiff's injury is compensable?

    E.    Alternatively, if the answer to A is yes, does the plaintiff's cause of action accrue when the allegedly wrongful conduct produced injury, without regard to the date on which, or whether, the plaintiff's injury is found to be compensable?

(Joint Petition for Certification at 1.)

9.    The parties stipulated and agreed that the Supreme Court's "answer to the certified questions will determine, or are reasonably certain to enter into the determination of, both the state and federal court actions." (Joint Petition for Certification at 6.)

10.    The Case Management Agreement also provided that the parties concurrently would submit to arbitration "all issues that have previously been raised in either the State Action or the Federal Action. (Case Management Agreement, ¶ 1.)

11.    The Case Management Agreement specified deadlines for the appointment of party-arbiters and an umpire and required the parties to make reasonable efforts to ensure the prompt convening of the panel and speedy completion of the Arbitration. (Case Management Agreement, ¶ 1.)

12.    The Case Management Agreement also added the following proviso:

> in the event that the Connecticut Appellate Court or Connecticut Supreme Court answer any of the Certified Questions in a way that would bring into question the standards applied or decisions rendered in the Arbitration, the award entered in the Arbitration will be vacated.

(Case Management Agreement, ¶ 1.)

13. The parties did not proceed with the arbitration. Each party named a party-arbiter but never selected a neutral. (FitzMaurice Aff., ¶ 8.)

14. Liberty Mutual's selected party-arbiter disclosed his potential conflicts of interest to plaintiff's counsel (*see* Pomeranz letter of March 2, 2004, copy attached as Ex. E to FitzMaurice Aff.). Plaintiff's party-arbiter made no disclosure of potential conflicts of interest; nor did he disclose the absence of any potential conflicts. (FitzMaurice Aff., ¶ 9.)

15. The Connecticut Supreme Court officially issued its opinion in *v. Liberty Mutual Ins. Co.*, 273 Conn. 487 (2005) on May 3, 2005. A copy of the decision was available earlier electronically, however, by April 27, 2005 at latest. (FitzMaurice Aff. ¶ 10.)

16. After the Connecticut Supreme Court rendered its decision, plaintiff's counsel asserted that the Court's ruling eliminated only some of the plaintiff's claims against Liberty Mutual. (FitzMaurice Aff. ¶ 11.) In particular, by letter dated April 30, 2005, plaintiff's counsel instructed plaintiff's party-arbiter to proceed with the arbitration "excluding only the negligence and bad faith counts thereof." (Letter from Laurence Parnoff to Lawrence Merly, dated April 30, 2005, copy attached as Ex. F to FitzMaurice Aff.) The letter is also captioned "NATURE OF CLAIMS: INTENTIONAL TORT AND CUTPA." (*Id.*)

17. By letter dated June 2, 2005, plaintiff's counsel wrote to defendant's counsel accusing Liberty Mutual of acting in bad faith by failing to proceed with the arbitration over plaintiff's supposedly remaining claims. (Letter from Laurence Parnoff to Daniel L. FitzMaurice, dated June 2, 2005, copy attached as Ex. G to FitzMaurice Aff.).

18. By letter dated June 3, 2005, defendant's counsel responded to plaintiff's counsel's letter of June 2, 2005. (Letter from Daniel L. FitzMaurice to Laurence Parnoff, dated June 3, 2005, copy attached as Ex. H to FitzMaurice Aff.).

19.     Since the Connecticut Supreme Court rendered its decision, a new dispute has emerged between the parties over whether the ruling disposed of all or only some of DeOliveira's claims.  (FitzMaurice Aff., ¶ 14.)

                              DEFENDANT,
                              LIBERTY MUTUAL INSURANCE CO.

By_____
    Daniel L. FitzMaurice (ct 05331)
    Michelle I. Turner (ct24012)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, CT 06103-3499
    (860) 275-0100
    Its Attorneys

## **CERTIFICATION**

This is to certify that on this date a copy of the foregoing was mailed, first class postage prepaid, to:

Laurence V. Parnoff, Esq.
1566 Park Avenue
Bridgeport, CT 06604

_____
Daniel L. FitzMaurice