# EXHIBIT A

NO.:  CV-96 032 93 90 S                         SUPERIOR COURT

ANTONIO DEOLIVEIRA

                                                    JUDICIAL DISTRICT OF

       v.                                      FAIRFIELD AT BRIDGEPORT

LIBERTY MUTUAL INSURANCE CO.                     DECEMBER 6, 1999

## REVISED COMPLAINT

FIRST COUNT, NEGLIGENCE CLAIM:

    1.     On MAY 11, 1989 the plaintiff ANTONIO DE OLIVEIRA, (hereinafter referred to as the injured employee), was an employee of the ROSS & ROBERS, INC. (hereinafter referred to as employer), as that term is defined by the Workers' Compensation Act (hereinafter referred to as the Act) in §31-275(5) of the Connecticut General Statutes (hereinafter referred to as C.G.S.).

    2.     At all material times the employer was subject to the provisions of the Act as required by C.G.S. §31-284.

3.    At all material times the defendant LIBERTY MUTUAL INS. CO. (herein after referred to as the defendant insurer) was, and continues to be, a business duly organized and existing under and by virtue of the laws of the State of Connecticut, or authorized to do business within such State.

4.    The payment of benefits under the Act for covered injuries and damages were required by C.G.S. §31-284(b) to be insured or otherwise guaranteed.

5.    On MAY 11, 1989 the plaintiff's employer had insured or guaranteed the payment of its Worker's Compensation liability to its employees by identifying the defendant insurer as the party responsible for insuring such payments.

6.    This contract of insurance was purchased by the employer from the defendant insurer:

(a)    in return for the payment by the employer of an insurance premium to the defendant insurer; and

(b)    for the purpose of providing Worker's Compensation benefits to injured employees of the employer.

7.    This insurance policy was sold by the defendant insurer with full knowledge of its legal and contractual duties and obligations.

8.    Under the terms of this insurance contract with the employer, the defendant insurer agreed to pay benefits covered under the Act to employees of ROSS & ROBERS, INC. who sustained an injury, as that term is defined by C.G.S. §31-275(8), arising out of and in the course of employment, as that phrase is defined by C.G.S. §31-275(12).

9.    By so agreeing with the employer the defendant insurer was obligated to pay benefits due an injured employee in accordance with the Act and the terms of its contract with the employer.

10.    At all material times alleged herein, this insurance guarantee for the payment of losses under the Act was in full force and effect.

11.    This insurance agreement was entered into by the defendant insurer with the employer for the benefit of employees of ROSS & ROBERS, INC.

12.    Notice was given to employees of ROSS & ROBERS, INC. as beneficiaries of said Workers' Compensation insurance or guarantee as required by Chapter 568 of the Connecticut General Statutes.

13.    On MAY 11, 1989 the injured employee, ANTONIO DE OLIVEIRA, sustained injuries and exacerbations, as those terms are defined by C.G.S. §31-275(8).

14.    Said injuries and exacerbations arose out of and in the course of the plaintiff's employment with the employer, as that phrase is defined by C.G.S. §31-275(12).

15.    The injured employee gave notice of injury to his Employer.

16.    The injured employee complied with all reasonable requests of his Employer.

17.    The injured employee was thereby entitled to the rights and benefits under the Act commencing not later than 7 days following said injury as provided by section C.G.S. §31-295.

18.    The injured employee was also thereby entitled to the rights and benefits under the contract of insurance sold by the defendant to the plaintiff's employer.

19.    The defendant insurer was obligated under the Act:
(a)    by C.G.S. §31-295, to pay wage and medical benefits to an employee, who sustains an

injury arising out of and in the course of employment, in a timely manner when and as due, but not later than 15 days after notice of said benefits being due;

(b)    by C.G.S. §31-290, not to evade its obligations under the Act; and

(c)    by C.G.S. §31-290a, not to discriminate against an employee who suffered an injury arising out of and in the course of employment; and

(d)    by C.G.S. §31-290c, not to prevent or attempt to prevent the receipt of benefits or reduce or attempt to reduce the amount of benefits under the Act by intentionally misrepresenting any material fact or intentionally failing to disclose any material fact.

20.    At all times herein relevant the defendant insurer knew, or should have known, that the Act is remedial in character and all rights of employees under the Act were to be construed liberally to effectuate its purposes.

21.    At all times herein relevant the defendant insurer knew, or should have known, that the purpose of the Act was the execution of a general public policy that sees in its giving of basic benefits to protect workers from a loss of income and the cost of medical care the relief given to those workers called upon to suffer as the result of industrial accidents as a humane and wholesome social regulation.

22.    At all times herein relevant the defendant insurer knew, or should have known, that the underlying principle of the Act was that the ends of justice and equity would best be served and the general good promoted, by lifting from the shoulders of unfortunate victims of industrial mishaps and their dependents some measure of the resulting burden, and casting it upon the industry which occasioned it and, through that industry, upon society at large.

23.    At all relevant times the defendant knew, or should have known:

(a)    the nature and extent of the injured employee's injury, losses and damages;

(b)    the nature, purpose, and underlying principal of the Act;

(c)     its obligations under the Act and its policy of insurance;

(d)     that the injured employee would rely on its compliance with the Act including its fairly and honestly conducting the aforesaid investigation and providing the aforesaid notice.

24.     The defendant insurer negligently:

(a)     acted in violation of, and failed to carry out, its statutory duties under the Act by its

    (1)     unreasonably contesting the plaintiff's Workers' Compensation Claim, as found by the Workers' Compensation Commissioner;

    (2)     failing to pay wage and medical benefits when and as due,

    (3)     failing to obtain medical examinations and evaluations of the plaintiff's condition,

    (4)     failing to acknowledge, denying and withholding information that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

    (5)     disclaiming the plaintiff's back injury claim without reasonable basis, as found by the Workers' Compensation Commission, and (6) causing further injury to the plaintiff by its handling of the plaintiff's Workers' Compensation claim as found by the Workers' Compensation Commissioner, to wit: emotional/psychological problems, and, in addition, depression, anxiety, emotional distress and despair with secondary exacerbation of the pain associated with his back condition and the deterioration of his physical condition;

(b)     acted in violation of, and failed to carry out, the express terms and implied duties of its policy of insurance by its

    (1)     unreasonably contesting the plaintiff's Workers' Compensation Claim, as found by the Workers' Compensation Commissioner,

    (2)     failing to pay wage and medical benefits when and as due,

    (3)     failing to obtain medical examinations and evaluations of the plaintiff's condition,

    (4)     failing to acknowledge, denying and withholding information that doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had

sustained a disabling work injury as the plaintiff claimed,

(5)    disclaiming the plaintiff's back injury claim without reasonable basis, as found by the Workers' Compensation Commissioner, and

(6)    causing further injury to the plaintiff by its handling of the plaintiff's Workers' Compensation claim as found by the Workers' Compensation Commissioner as stated in (a) above;

(c)    disregard the injured plaintiff's physical, mental and financial condition as stated in the medical reports it received and its records and the effects thereon by its

(1)    unreasonably contesting the plaintiff's Workers' Compensation Claim as found by the Workers' Compensation Commissioner,

(2)    failing to pay wage and medical benefits when and as due,

(3)    failing to acknowledge, denying and withholding information that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

(4)    failing to obtain medical examinations and evaluations of the plaintiff's condition, and

(5)    disclaiming the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner;

(d)    acted in disregard of further psychological and emotional injury and financial damage being caused to the injured employee by its

(1)    unreasonably contesting the plaintiff's Workers' Compensation Claim as found by the Workers' Compensation Commissioner,

(2)    failing to pay wage and medical benefits when and as due,

(3)    failing to acknowledge, denying and withholding information that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

(4)    failing to obtain medical examinations and evaluations of the plaintiff's condition, and

(5)    disclaiming the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner;

(e)    acted unfairly and unreasonably regarding its duties and obligations as herein stated in the preceding paragraphs by its:

(1)    unreasonably contesting the plaintiff's Workers' Compensation Claim as found by the Workers' Compensation Commissioner,

(2)    failing to pay wage and medical benefits when and as due,

(3)    failing to acknowledge, denying and withholding information that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

(4)    failing to obtain medical examinations and evaluations of the plaintiff's condition,

(5)    disclaiming the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner, and

(6)    causing further injury to the plaintiff by its handling of the plaintiff's Workers' Compensation claim as found by the Workers' Compensation Commissioner, to wit: emotional/psychological problems, and, in addition, depression, anxiety, emotional distress and despair with secondary exacerbation of the pain associated with his back condition and the deterioration of his physical condition;

(f)    failed to timely comply with, the Act by its

(1)    unreasonably contesting the plaintiff's Workers' Compensation back injury claim by unreasonably delaying the resolution of that claim as found by the Workers' Compensation Commissioner,

(2)    failing to pay wage and medical benefits when and as due,

(3)    failing to acknowledge, denying and withholding information that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

(4)    failing to obtain medical examinations and evaluations of the plaintiff's condition,

and (5) disclaiming the plaintiff's back injury claim without reasonable basis, as found by the Workers' Compensation Commissioner;

(g)    failed to timely provide a full, fair and reasonable investigation of the plaintiff's back claim by its failing to obtain medical examinations and evaluations of the plaintiff's condition or any other evidence to reasonably support its disclaimer of the plaintiff's back injury claim;

(h)    failed to timely provide a reasonable basis for its decision to contest Workers' Compensation benefits by its unreasonably

    (1)    disclaiming the plaintiff's back injury claim without reasonable basis, as found by the Workers' Compensation Commissioner,

    (2)    denying and wrongfully withholding information confirming that the doctor to whom its principal sent the plaintiff for evaluation found the plaintiff to have sustained a disabling work injury as the plaintiff claimed, and

    (3)    unreasonably delaying the resolution of the plaintiff's back claim;

(i)    failed to timely provide a full and truthful disclosure of material facts, to wit:

    (1)    that it had no reasonably basis for contesting the plaintiff's Workers' Compensation back claim as found by the Workers' Compensation Commissioner,

    (2)    that its disclaiming the plaintiff's back injury claim was without reasonable basis as found by the Workers' Compensation Commissioner,

    (3)    that the doctor to whom its principal sent the plaintiff for evaluation found the plaintiff to have sustained a disabling work injury as the plaintiff claimed ; and/or

(j)    failed to timely comply with the terms of the defendant's contract of insurance by

    (1)    unreasonably contesting the plaintiff's Workers' Compensation Claim as found by the Workers' Compensation Commissioner,

    (2)    failing to pay wage and medical benefits when and as due,

    (3)    failing to obtain medical examinations and evaluations of the plaintiff's condition,

    (4)    failing to acknowledge, denying and withholding material information that the

doctor to whom its principal sent the plaintiff for evaluation reported that the plaintiff had sustained a disabling work injury,

(5)    disclaiming the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner, and

(6)    unduly delaying the resolution of the plaintiff's back injury claim as found by the Workers' Compensation Commissioner.

25.    As a result of the aforesaid conduct of the defendant, the injured employee suffered damages and losses in that he:

(a)    was forced to rely on limited savings and the charity of others for the basic necessities of life;

(b)    was prevented from making necessary decisions and plans for the future regarding his and his wife's retirement;

(c)    was required to undertake the expense and stress of formal Workers' Compensation Hearings;

(d)    was subjected to emotional distress, the exacerbation of the injured employee's physical and mental conditions and caused thereby to suffer further injuries and damages as found by the Workers' Compensation Commissioner, to wit: emotional/psychological problems, and, in addition, depression, anxiety, emotional distress and despair with secondary exacerbation of the pain associated with his back condition and the deterioration of his physical condition;

(e)    was caused to suffer humiliation, stress and embarrassment;

(f)    was caused to incurred additional expenses for medical care and attention and pharmaceutical supplies, and may be required to expend additional sums for some or all of these in the future; and

(g)    was incapacitated, restricted and limited from carrying on life's usual activities, including the ability to work and earn income and, as a result of the permanent nature of the injury, may in the future be incapacitated from carrying on these activities.

SECOND COUNT, INTENTIONAL TORTIOUS CONDUCT CLAIM:

1.    Paragraphs 1 through 23 of the First Count are hereby incorporated and made paragraphs 1 through 23 of this Count.

24.    The defendant insurer intentionally:
Subparagraphs (a) through (j) of paragraph 24 of the First Court are repeated herein as subparagraphs (a) through (j) of this paragraph.

(k)    used the injured employee's medical and financial condition for its financial benefit by withholding payments due by

(1)    unreasonably contesting and delaying the plaintiff's Workers' Compensation Claim as found by the Workers' Compensation Commissioner,

(2)    failing to pay wage and medical benefits when and as due,

(3)    failing to acknowledge, denying and withholding information that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

(4)    failing to obtain medical examinations and evaluations of the plaintiff's condition,

(5)    disclaiming the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner, and

(6)    causing further injury to the plaintiff by its handling of the plaintiff's Workers' Compensation claim as found by the Workers' Compensation Commissioner to wit:  emotional/psychological problems, and, in addition, depression, anxiety, emotional distress and despair with secondary exacerbation of the pain associated with his back condition and the deterioration of his physical condition;

(l)    took advantage of the injured employee's condition to cause a payment of benefits at less then fair and just compensation or to cause the injured employee to abandon in

whole or in part just claims under the Act by its

(1)     unreasonably contesting the plaintiff's Workers' Compensation Claim and unduly delaying its resolution as found by the Workers' Compensation Commissioner,

(2)     failing to pay wage and medical benefits when and as due,

(3)     failing to obtain medical examinations and evaluations of the plaintiff's condition to support its denial of benefits,

(4)      failing to acknowledge that the doctor to whom its principal sent the plaintiff for evaluation reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed,

(5)     disclaiming the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner, and

(6)     causing further injury to the plaintiff by its handling of the plaintiff's Workers' Compensation claim as found by the Workers' Compensation Commissioner to wit:  emotional/psychological problems, and, in addition, depression, anxiety, emotional distress and despair with secondary exacerbation of the pain associated with his back condition and the deterioration of his physical condition;

(m)     attempted to prevent the receipt of benefits or to reduce the amount of benefits under the Act by misrepresenting and/or withholding material facts or information, to wit

(1)     that it had no reasonable basis to contest the plaintiff's Workers' Compensation Claim as found by the Workers' Compensation Commissioner,

(2)     that it had failed to obtain any medical examinations and evaluations of the plaintiff's back condition,

(3)     that it failed to acknowledge, denying and withholding information confirming that the doctor to whom its principal sent the plaintiff for evaluation had reported that the plaintiff had sustained a disabling work injury as the plaintiff claimed, and

(4)     that it had disclaimed the plaintiff's back injury claim without reasonable basis as found by the Workers' Compensation Commissioner);

25.     Paragraph 25 of the First Count is hereby incorporated and made paragraph 25 of this Count.

THIRD COUNT, RECKLESS CONDUCT CLAIM:

1.      Paragraphs 1 through 23 of the First Count are hereby incorporated and made paragraphs 1 through 23 of this Count.

24.     The defendant recklessly:

Subparagraphs (a) through (m) of paragraph 24 of the Second Court are repeated herein as subparagraphs (a) through (m) of this paragraph.

25.     Paragraph 25 of the First Count is hereby incorporated and made paragraph 25 of this Count.

FOURTH COUNT, BREACH OF IMPLIED COVENANT OF GOOD FAITH CLAIM:

1.      Paragraphs 1 through 23 of the First Count are hereby incorporated and made paragraphs 1 through 23 of this Count.

24.     The defendant insurer acted in bad faith by acting as alleged in paragraphs 24 of the First, Second, and Third Counts and paragraphs 25 of the Fifth and Sixth Counts.

25.     Paragraph 25 of the First Count is hereby incorporated and made paragraph 25 of this Count.

FIFTH COUNT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM:

1.      Paragraphs 1 through 24 of the Second Count are hereby incorporated and made paragraphs 1 through 24 of this Count.

25.     The defendant insurer intentionally inflicted emotional distress on the plaintiff by its intentionally:

(1)     disregarding the injured employee's physical, mental and financial condition and needs;

(2)     disregarding the probability of inflicting stress and strain on the injured employee's financial, physical and mental conditions and thereby of causing such further psychological and motional injuries and damages which were substantially certain to follow;

(3)     attempting to use the injured employee's weakened medical and financial condition for the defendant's financial benefit by withholding payments due;

(4)     attempting to take advantage of the injured employee's condition to cause a payment of benefits at less then fair and just compensation or to cause the injured employee to abandon in whole or in part just claims under the Act; and

(5)     attempting to prevent the receipt of benefits or to reduce the amount of benefits under the Act by misrepresenting and/or withholding material facts or information.

26.     Paragraph 25 of the First Count is hereby incorporated and made paragraph 26 of this Count.

SIXTH COUNT, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS:

1.      Paragraphs 1 through 24 of the First Count are hereby incorporated and made paragraphs 1 through 24 of this Count.

25.    The defendant insurer negligently inflicted emotional distress on the plaintiff by its negligent:

(1)    disregard of the injured employee's physical, mental and financial condition and needs; and

(2)    disregard of the probability of inflicting stress and strain on the injured employee's financial, physical and mental conditions and thereby of causing such further psychological and motional injuries and damages which were substantially certain to follow.

26.    Paragraph 25 of the First Count is hereby incorporated and made paragraph 25 of this Count.


SEVENTH COUNT, CUIPA ALLEGATIONS AS BASIS FOR CUTPA CLAIM:


1.    Paragraphs 1 through 25 of the Fifth Count are hereby incorporated and made paragraphs 1 through 25 of this Count.

26.    The aforesaid insurance policy was sold by the defendant insurer:

(a)    as part of the conduct of its business of selling insurance; and

(b)    as commerce in which it engaged by advertising, selling, and offering for sale and distribution to the public its insurance services and such contracts of insurance.

27.    The defendant insurer has acted as aforesaid on other occasions such that its conduct appears to be a general business practice to discourage Workers' Compensation claims, breach its contractual and statutory duties to injured employees and deprive injured employees of their rights

under the Worker's Compensation Act, thereby taking an unfair trade advantage against business competitors who truly, fairly and justly discharge their duties to injured employees under the Act and their contract of insurance or guarantee.

    28.    The foregoing acts and omissions constitute a violation of the Unfair Insurance Practices Act of the State of Connecticut set forth in the Connecticut General Statutes, Section 38a-816:

    (a)    (1) Misrepresentations and false advertising of insurance policies by its breaching its

        (i)    express representations in its policy of insurance that it would conform its conduct to the requirements of the Act and regulations and the terms of its policy of insurance,

        (ii)    express representations in its policy of insurance that it would pay claims covered under the Act and its policy of insurance, and

        (iii)    its implied representation to act in good faith in its conduct under its policy of insurance;

    (b)    (2) False information and advertising generally by its breaching its

        (i)    express representations in its policy of insurance that it would conform its conduct to the requirements of the Act and regulations and the terms of its policy of insurance,

        (ii)    express representations in its policy of insurance that it would pay claims covered under the Act and its policy of insurance, and

        (iii)    its implied representation to act in good faith in its conduct under its policy of insurance;

    (c)    (6) Unfair claim settlement practices, (Committed or performed with such frequency as to indicate a general business practice);

    (d)    (7) Failure to maintain complaint handling procedures by not having such procedures, or having an understanding of what such procedures are sufficiently to respond to a request for complaints; and

(e)    (15) Failure to pay accident and health claims consisting of the plaintiff's medical bills for his accidental work injury within forty-five days of receipt by an insurer of the claim without the insurance commissioner determining that a legitimate dispute exists as to coverage, liability or damages.

29.    One or more of the aforesaid acts and omissions of the defendant insurer constitute a violation of the Unfair Trade Practices Act of the State of Connecticut set forth in Section 42-110b of the Connecticut General Statutes.

30.    Paragraph 25 of the First Count is hereby incorporated and made paragraph 30 of this Count.

I hereby certify that a copy of the foregoing has been mailed 11-19-99 and today to Day, Berry & Howard One City Place, Hartford, CT 06103-3499

_____    Attorney

THE PLAINTIFF BY:

LAURENCE V. PARNOFF, P.C.

BY: _____

LAURENCE V. PARNOFF, No.:101180

1566 Park Ave Bridgeport 06604-2502

Tel.: 203-336-1861;   Fax 203-336-1861

# EXHIBIT B

CV96 039390s

*****************************X

ANTONIO DEOLIVEIRA,                    :        SUPERIOR COURT

                    PLAINTIFF,         :        JUDICIAL DISTRICT


VERSUS                                 :        AT BRIDGEPORT


LIBERTY MUTUAL INSURANCE

   COMPANY,                            :

                    DEFENDANT.         :        APRIL 11, 2002

*****************************X



   B    E    F    O    R    E:


     THE HONORABLE ELIZABETH A. GALLAGHER, JUDGE



A P P E A R A N C E S:


        For the Plaintiff:    LAURENCE V. PARNOFF, ESQ.
                              566 Park Avenue
                              Bridgeport, Connecticut


        For the Defendant:    ANN GRUNBECK MONAGHAN, ESQ.
                              DAY, BERRY & HOWARD, LLP
                              Cityplace I
                              Hartford, Connecticut

                              DANIEL L. FITZMAURICE, ESQ.
                              DAY, BERRY & HOWARD, LLP
                              CityPlace I
                              Hartford, Connecticut




                              Deborah L. Watson
                              Certified Court Monitor

CV96 039390s

The Following Transcript in the Matter of

ANTONIO DEOLIVEIRA VERSUS LIBERTY MUTUAL INSURANCE

COMPANY, was Heard Before The Honorable Elizabeth A.

Gallagher, Judge, Dated April 11, 2002.

                    *   *   *

                COURT IS OPENED

    THE COURT:  Good Morning.  Good Morning everybody.

All right.  I want to tell you what my decision is

on--on Plaintiff's Motion for Summary Judgment.

There's no motion that's filed but I'm taking and

treating it as an oral motion, so that I will make a

decision on that, and I AM DENYING THAT MOTION FOR

SUMMARY JUDGMENT because I do think that there are

genuine issues of fact that have to be decided.

    With regard to the Defendant's motions, Motion

for Summary Judgment, I'm looking at Section 31-300

of the Workers Compensation Act, and I--I do not

think that the insurer, the acts of the insurer that

are alleged by the Plaintiff in this complaint are

covered by any of the statutes under the Workers

Compensation Act, with regard to any intentional

misconduct.  I think--so I think I AM GOING TO DENY

THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO

ALL THE INTENTIONAL COUNTS because I do not think

that these statutes really address the acts that are

alleged in this complaint.  Now with regard to the

Negligence Counts, I AM ALSO GOING TO DENY THE

2

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THOSE

COUNTS.  I do not believe that what is alleged, the

mishandling of these claims which are basically

alleged by the--by the Plaintiff, are acts that are

arising from the course of employment.  I believe

that these cases are analogous to any cases where

there are third party beneficiaries to contracts,

and I don't think they're covered by workers comp.

I think that the--the allegations, at least are--are

allegations that bring these--this--this matter

outside the exclusivity provisions of the Workers

Comp Act.  There will be a written decision that

will follow; however, because of my own time--my own

constraints I'm giving you the oral decision at this

point.  There will be a written decision that will

follow in due time, in due course.  Is there anything

else that you want to bring to my attention?

MR. PARNOFF:  Your Honor, I 'm wondering if

with--counsel and I shouldn't possibly speak with

you in chambers about the procedure at this point

before we go onto other things, unless you think

there's--

MR. FITZMAURICE:  Well, there--there is the

other part of our motion which deals with the Summary

Judgment, Judge, even--even if you allow these claims

to be made they're being made in 1995.

3

THE COURT:  I--.  Yes, I understand that.  I'm
sorry.  This is the part I had the most problem with
so I--

MR. FITZMAURICE:  Okay.

THE COURT:  --gave you this answer.  I'M GOING
TO DENY THE SUMMARY JUDGMENT ON THE STATUTE OF
LIMITATIONS GROUNDS ALSO.  Okay.  Now did you want
to see me in chambers?

MR. FITZMAURICE:  That's--that's fine.

THE COURT:  Okay.

(WHEREUPON A RECESS WAS TAKEN)(OFF RECORD)

(ON RECORD)(COURT IS RECONVENED)

THE COURT:  All right.  Now as I understand it
we do have an agreement.

MR. PARNOFF:  Yes, Your Honor.

THE COURT:  All right.

MR. FITZMAURICE:  Yes, Your Honor.

MR. PARNOFF:  We have agreed that the matter
will be referred to Judge Freedman for arbitration.
That you will certify for appeal certain issues which
the parties will provide you with.  If there's any
difference in our claims regarding the issues you'll
make a decision and that will be the decision that
we'll deal with.  This case will not proceed it--it
will go through arbitration.  You've made certain
decisions and certain determinations and rulings on

4

the record in this case which will be the law of the

case.  The arbitration will be binding upon the

parties.  It will be a binding arbitration.  It will

be submitted to Judge--Judge Freedman under the laws

of the State of Connecticut, and will be conducted

in accordance with the Judicial Rules of Evidence

that's setforth in the Connecticut Code of Evidence,

and the controlling precedent which is--which is your

decision which we defined as the law of the case, and

the issues to be arbitrated  are those framed by the

operative complaint in this case as of April 11th,

2002, and that the provisions of Section 52-408 the

Arbitration Statutes will apply to the arbitration.

    THE COURT:  All right.

    MR. PARNOFF:  And this agreement will be binding

on the parties irrespective heirs, successors and

assigns.  We will sign a--sign an arbitration agreement

to submit to Judge Freedman, which in facts sets

forth these issues, and the only decisions I think

that remain for you to actually make, Judge, are the--

the decisions regarding the --the Motion in Limine

that the Plaintiff filed, and I'll give you the dates

on--on those just so you'll have them.  That's dated

April 4th, 2002, Your Honor.

    THE COURT:  All right.

    MR. PARNOFF:  The--the Plaintiff's Motion for

5

Imposition of Sanctions dated March 26, 2002, which--
which are actually combined with the two.

THE COURT:  I'm sorry.  What's the second one,
Mr. Parnoff?

MR. PARNOFF:  The second one is--is the
Plaintiff's Motion for Imposition of Sanctions--

THE COURT:  Okay.

MR. PARNOFF:  --pursuant to 13-14 of the Practice
Book, Section 13-14.  That actually contains the
exhibits that are referred to in Plaintiff's Motion
for Limine dated April 4th, and it's actually two
things, Your Honor, it's a Motion in Limine to--and
it's a Motion to Compel Compliance to Discovery, and
it's a Motion for an In Camera Review.  It deals with
both missing documents in discovery and that were
provided in discovery compliance, and with documents
claimed to be privileged.  I'm not sure actually
whether that--those are issues that would be decided
by Judge Freedman under the--the rules of practice,
Connecticut Rules of Evidence, I don't know how Mr.
Fitzmaurice feels about it, but if he agrees that
that's where it should be--be decided that's okay
with me too.

MR. FITZMAURICE:  Your Honor, I will add a few
things to what Mr. Parnoff said.  So that it's clear,
we're anticipating I believe four issues to be

6

reserved under Section 73-1 of the Practice Book which is also Section 52-235 of the Connecticut General Statutes.

THE COURT: Okay.

MR. FITZMAURICE: Three of those issues are issues that we have identified. One, whether the Workers Compensation Act, and I'm paraphrasing, we're going to actually put these in--in writing subject to Your Honor's approval.

THE COURT: Sure.

MR. FITZMAURICE: One, whether the Workers Compensation Act provides the exclusive remedy for the types of claims in this complaint. Two, if the answer to question one is no, then whether any claims that--that exceed the Workers Compensation Act remedies would have to be limited to intentional and deliberate conduct, and then three, assuming the answer to the first question is no, when the--and we'd have to phrase this as a yes no answer, but whether--whether one needs to exhaust the workers compensation procedures before pursuing such a claim, or alternatively, whether the claim accrues when the facts happens such that it would effect the statute of limitation ruling in this--in this case which you made this morning. The fourth is an issue that Mr. Parnoff has identified which is whether the plaintiff and the circumstances

7

would be entitled to access to attorney/client privileged materials as was setforth in the <u>Kludier</u> decision, I believe, by Judge Mottolese, or whether as our position is they're not entitled to those materials as we believe the <u>Metropolitan</u> case and other cases would hold.  Should the answers to any of those four legal issues upset the law of the case, if you will, then the--then the arbitration award would be vacated.  In other words, if--if it turns out that you had to prove intentional and deliberate conduct and the arbitration went forward on the--on the law of the case as it stands now, the arbitration award would be--would be vacated.  Otherwise, as Mr. Parnoff indicated, the only remedies for relief from the arbitration award would be those setforth in Section 52-408 et sec of the--of the General Statutes which deal with arbitration appeals.

THE COURT:  Okay.  Understood.

MR. PARNOFF:  I just have one point that I would clarify, Your Honor, as to the--the issue regarding whether you have to exhaust workers compensation procedure before an action accrues.  I would--I would say the question really is the worker--whether or not the action itself if--if there is a statute of limitations, it's told until you have a right to workers comp, or any action that's brought is premature

8

until you have a right to workers comp.  I--I think
that we worked that out though somehow in the way
we framed the questions for the Appellate Court.

        THE COURT:  Okay.

        MR. PARNOFF:  Thank you, Your Honor.

        THE COURT:  You're welcome.

        MR. PARNOFF:  And thank you for your help in
resolving this matter.

        THE COURT:  You're welcome.

        MR. FITZMAURICE:  In terms--.  Lastly, Your
Honor, in terms of the motion that Mr. Parnoff has
addressed there's really two parts of it.

        THE COURT:  Right.

        MR. FITZMAURICE:  One part is the privileged
part which I think we can reserve just as a matter
of law for--

        THE COURT:  Yes.

        MR. FITZMAURICE:  --the Appellate Court, and the
other part deals with a question of kind of relevancy
for discovery purposes in a discovery issue.  Mr.
Parnoff raised this beforehand, as to that part I
think Judge Freedman can--can resolve that as part
of the arbitration.

        THE COURT:  I think so too.  I think it's properly
before Judge Freedman.

        MR. PARNOFF:  Now Judge, should we contact Judge

9

Freedman or would your office do it just to let him know?

THE COURT:  We will.  We will contact Judge Freedman.

MR. PARNOFF:  I appreciate that.

THE COURT:  Yes.  Case Flow will contact Judge Freedman.  Okay?

MR. PARNOFF:  Okay.

THE COURT:  All right.

MR. PARNOFF:  Thank you again.

THE COURT:  I do thank you all three of you for your hard work in this matter.  I think this is the best possible way to go, and I'll wait to see the issues to be served by.  All right.

MR. FITZMAURICE:  Thank you, Your Honor, for your patience and your hard work in this as well.

THE COURT:  You're very welcome.  You're very welcome.  Okay.

                    *    *    *    *

                       E   N   D

CV96 039390s                                                  10

*******************************X

ANTONIO DEOLIVEIRA                :        SUPERIOR COURT

VERSUS                            :        JUDICIAL DISTRICT

LIBERTY MUTUAL INSURANCE

  COMPANY                         :        AT BRIDGEPORT

*******************************X

                                           APRIL 11, 2002


                            CERTIFICATION


        I, Deborah L. Watson, certified court monitor

do hereby certify that the foregoing transcript is a

true and correct transcription of the official tape

recording made in said cause of action as Heard

Before The Honorable Elizabeth A. Gallagher, Judge,

Dated April 11, 2002.

        Dated at Bridgeport, Connecticut this

28th Day of June, 2002.